T. R. SUTTON *v.* W. B. CALHOUN—HEIRS OF MARTIN, Intervenors.

The defendant relying on a tax sale is bound to show not only the existence of an assessment, but also its legality.

Where the title of the owner of the land is of record, his name is required by statute, as descriptive of the land assessed, and an error in this respect is fatal to a title by a tax sale.

It is necessary that the land assessed should be designated by its boundaries, and when the boundaries given are confused and erroneous, the assessment does not possess that particularity and certainty necessary for the validity of a tax sale.

Parol evidence is admissible to show a misdescription in the act of sale of the land really sold, there being an error on the face of the act itself.

APPEAL from the District Court of the Parish of Concordia, *Ratliff*, J., presiding. *Thomas P. Farrar*, for plaintiff and appellant. *L. V. Reeves*, for intervenors. *A. Snyder*, for defendant.

LAND, J. This suit is brought for the recovery of a tract of land situated on Black River, in the parish of Concordia, and described as the south-west fractional quarter of section fourteen, containing one hundred and sixty-nine acres. The north fractional half of section twenty-three, containing two hundred and seventy-nine 90-100 acres, and the west half of the south-west quarter, and the west half of the south-east quarter of the same section, containing together one hundred and fifty-eight 80-100 acres, and containing altogether 607 70-100 acres.

The plaintiff contends that *Asa T. Martin*, the patentee of the United States Government, sold *the whole* of these lands to *W. A. Miller*, by act of sale duly recorded in the parish of Concordia, on the 3d day of December, 1844. And that *Miller* sold the same lands to him, plaintiff, by act of sale, duly recorded in the same parish on the 22d day of August, 1849, and that there is a misdescription of a portion of the land in the acts of sale conveyed.

The defendant sets up title derived from *Thomas Edwards*, who purchased these lands at two different sales for taxes.

The intervenors claim title to the north half of section twenty-three, on the ground that their ancestor, *Asa T. Martin*, never parted with his title to the same.

The validity of the defendant's title will be first considered.

The first sale for taxes was made on the 4th day of November, 1848, for the taxes assessed in the name of the patentee, *Asa T. Martin*, due on the land for the year 1847. And the second sale for taxes was made on the 1st of November, 1851, for the taxes assessed in the name of *W. A. Miller*, due on the land for the year 1850.

The first assessment or entry on the tax roll, by virtue of which the lands were sold on the 4th of November, 1848, is in these words and figures, to wit: *A. T. Martin*, 735 acres land, value $3685, tax $6 14½, tax $3 68 3-6—total $9 82 4-6, parish tax $8 18.

The second assessment is in these words and figures, to wit: *W. A. Miller*, 606 acres, W. ½ and W. ½ of S. E. ¼ sec. 23, S. W. fractional ¼ sec. 14, T. 6, R. 6, $2000 amount, tax $2 20, $2 00—total $4 20, parish tax 73c., special parish tax $1 10.

The 26th section of the Revenue Act of 1847 provides, that if the land to be assessed, be a tract or lot which *is known by a name, or if the owners name be*

27

SUTTON
v.
CALHOUN.

*known, they shall designate it by those particulars, and by its boundaries.* If it have no name, or the *name be unknown,* and *if the owner be unknown* they shall designate it by *boundaries alone.* The 23d section of the Revenue Act of 1850 contains the same provisions.

The defendant relying on a tax sale for his title, is bound to show not only the existence of an assessment but also its legality. He has shown an assessment of the lands, and the question to be determined is, whether that assessment was legal.

In forced sales for taxes, every formality of the law must be strictly complied with, under the pain of nullity. *Nancarrow* v. *Weathersbee,* 6 N. S. 348; *Smith* v. *Corcoran,* 7 L. 50; *Reeves* v. *Towles,* 10 L. 283; 13 L. 205, 4. A. 248; 6 A. 542; 8 A. 19; 10 A. 329.

The inadequacy of the price in sales of this description, and the absence or incapacity of the owners, arising from infancy, coverture and other causes, have had their influence in the establishment of this rigid rule of law. And its application in this case defeats the title of the defendant.

In the first assessment there is *error in the name of the owner,* and no *boundaries* of the land are given.

In the second assessment there is also *an error in the name of the owner,* and the *boundaries given* are *confused* and *erroneous,* and do not possess that particularity and certainty necessary to the validity of a tax sale. *Carmichael* v. *Aiken,* 13 L. 210.

When the lands were assessed in the name of *Martin, W. A. Miller* was the owner, and his title of record. When they were assessed in the name of *Miller,* *Thomas R. Sutton* was the owner, and his title was of record. The name of the owner was required by the statute as descriptive of the lands assessed, and an error in this particular is as fatal as an error in the boundaries themselves.

It is, therefore, the opinion of the court, that the defendant is without title to the lands in dispute.

The right of the intervenors, as heirs-at-law of *Asa T. Martin,* to the north half of section twenty-three will next be considered.

In the deed from *Martin* to *Miller,* he sells and conveys all that certain tract, piece or parcel of land, lying, situate, and being in the parish of Concordia, in said State, known and described as the west half of the south-east quarter of section number twenty-three, and *the west half of the south-west quarter, and the west half of the south-west quarter of section number twenty-three,* of township number six of range number six, and the south-west fractional quarter of section fourteen, same township and range, containing in all six hundred and six acres, be the same more or less.

The evidence shows that the north half of section twenty-three was the property of *Martin* at the date of the sale to *Miller,* and was necessary to unite the parcels of land sold and conveyed into one tract, piece or body, and was necessary to make up the quantity of land mentioned in the act of sale, or to make up a quantity which would approximate thereto. The Receiver's receipts of the purchase or entry of the north half of section twenty-three by *Martin,* were in the possession of his vendee, and offered in evidence on the trial of this cause; and it is not pretended that his possession was improperly obtained.

The north half of section twenty-three, was always claimed by the vendee after the sale, and was not inventoried after the death of *Martin* as the property of his succession. There is in the description of the land sold evidently an error on the

face of the act itself, which gives to the circumstances stated a weight they would not otherwise possess.

The words in the act of sale, *west half of the south-west quarter, and the west half of the south-west quarter of section number twenty-three,* are either a careless repetition or a misdescription of a parcel of land in section twenty-three, which the vendor intended to sell and the vendee intended to buy. The facts established by the evidence are all consistent with the latter hypothesis, and are repugnant to any other rational conclusion.

In the case of *Palanque* v. *Guesnon,* 15 L. 311, the court held that parol evidence was admissible to show a misdescription in the act of sale of the land really sold ; and in this case there is positive parol testimony as to the fact of a misdescription of the north half of section twenty-three, and is fully corroborated by circumstances as well as the acts of the parties, and leaves no doubt on the mind of the truth of the fact. *Broussard* v. *Ladrique,* 4 L. 352.

It is, therefore, ordered, adjudged and decreed, that so far as the judgment of the lower court and the verdict of the jury rejected the plaintiff's claim to the north half of section twenty-three, be reversed and set aside ; and it is further ordered and decreed, that the petition of intervention be dismissed and the claim of the intervenors rejected, and that the plaintiff recover of the defendant the north half of said section twenty-three, and that he be quieted in his title thereto ; and it is further ordered, adjudged and decreed, that so far as the judgment of the lower court is in favor of plaintiff, for the other parcels of land claimed in this suit, and described in said judgment, be affirmed ; and it is further ordered and decreed, that so far as the judgment of the lower court and the verdict of the jury condemn the plaintiff and intervenors to pay to the defendant the sum of two hundred and fifty dollars for improvements, be reversed and set aside, and that said defendant do have and recover of the plaintiff the said sum of two hundred and fifty dollars ; and it is further decreed, that the defendant pay the costs of the principal action in the lower court and one-half of the costs of this appeal, and that the intervenors pay the cost of their intervention in the lower court, and the other half of the costs of this appeal.