BREAUX, J.
The action is petitory, for land described in the petition, and for rents and revenues thereon.
An exception of want of tender was interposed by defendants and overruled. An exception of res judicata was tried with the merits.
The answer of the defendants sets out that the land in controversy was forfeited to the state for delinquent taxes.
In a separate answer, filed after the first *475 answer, in which he and all the other defendants joined, George Weber, one of the defendants, avers that he owns 25 acres of the land in controversy, by purchase made in good faith in 1897.
The other defendants also filed separate answers, after the first answer, in which all had joined.
John Weber, in his separate answer, avers that he owns 20 acres of the land in controversy by purchase from Martin Weber, another defendant, on November 9, 1893. Mary Weber claims, in her answer, 25 acres by purchase from George Weber on April 10, 1893. Eva Weber claims a similar number of acres bought from Martin Weber on ISth of April, 1897. Eugene Simon claims 100 acres under his purchase from Benjamin Falk on the 28th of December, 1891. William Whittington, Jr., claims 40 acres bought from the same Falk on December 28, 1891.
Benjamin Falk, in his answer, avers that he bought from Martin Weber on June 10, 1887, the undivided two-thirds of the lands claimed by plaintiff. Martin Weber answers individually and as natural tutor of Martin Weber, Jr., John Weber, and George Weber, and in Ms answer he is joined by Eva Weber, Mary Weber, I-Iomer Weber, and Adam Weber, children of Martin Weber, who bought at tax sale, as hereafter mentioned. They are also called in warranty.
Benjamin Falk (since deceased) appeared, and admitted that he had sold lands as alleged by the parties calling him in warranty.
All the defendants and the warrantors aver that they acted in good faith, and that each was in possession while owner; i. e., each from the date of his purchase. Those who are now in possession as owners, in case of eviction, claim their improvements. Each of the defendants pleads the prescription of one, three, five, and ten years.
The dates of the different deeds of sale to which we have before referred are correctly stated in the answers; also the description of the property covered by the respective deeds.
As relates to the facts of the case, the records disclose that all parties trace their titles to the same original source; that lands were assessed in the name of Robins and Cooper for the taxes of 1873. They having become delinquent, the lands were redeemed in 1875. They, it appears, were again assessed, and afterward forfeited to the state, and in 1881 they were sold to Martin Weber by the sheriff and tax collector under Statute No. 107 of 1880.
In the year 1887 Martin Weber sued out a monition, and after the usual formalities this monition was homologated. We should have stated before that the legal representatives of the succession of Benjamin Falk wore made parties to the suit; he having-died, as before stated, since the suit was instituted.
In the tax sale, dated April, 1881, to which the defendants trace their title, the property is described as “a certain tract of land assessed in the name of Robins and Cooper, containing six hundred and forty acres; boundaries unknown.” The tax deed of the adjudication sets forth that Martin Weber became the owner of the property, being the highest bidder, for the sum of $125 cash. The property was then sold at tax sale for “delinquent taxes and licenses” (quoting from the deed), without referring to the taxes of any particular year, except that they were the taxes prior to 1881. In other words, the sheriff and tax collector sold “all property forfeited or sold to the state that had thus been offered for sale,” and not previously sold by him at prior offering (copying from the deed).
This sale was preceded by an advertisement of land to be sold for delinquent taxes, without stating the year, and without description of the property.
The following shows assessment of the property for 1877, “Robins and Cooper, G45 acres, valued at $1,200,” and contains no description of the property. In the monition proceedings the property is not described. The judgment of monition sets out that the land had been forfeited to the state for the taxes of the year 1877.
The judgment of the district court sustains plaintiffs’ title to the land, places them in possession of the land claimed by Martin Weber and the estate of Benjamin Falk, and orders that they be placed in possession of the remainder of the tract upon payment to the other defendants of the amount the judgment recognized as due to defendants.
*477 The judgment annulled, the sale made to Martin Weber April 2, 1881; the sale from Martin Weber to Benjamin Falk in June, 1887; the sale from Falk to Pierre E. Simon on December 28, 1891; the sale from Benjamin Falk to William Whittington, Jr., on December 28, 1891; the sale from Martin Weber to his children John, George, and Mary on the 9th of November, 1893, and the sale of the same vendor to his daughter Eva Weber on April 10, 1897; and the sale from George Weber to Marcel Begneaud and Paul Boury. It decreed, to Benjamin Falk’s estate $800 for the value of his improvements, less rents and revenues to be ascertained;-’ decreed to it another sum of $123.32, purchase price of the land; to Martin Weber, judgment for $15 for improvements, and $125 for the price of the adjudication at tax sale, less rents and revenues to be ascertained; to ®. Simon, $GOO for improvements, with the right to retain possession of the land until paid, and against the estate of Benjamin Falk, his warrantor, for $900, the purchase price of the land; to William Whittington, judgment against plaintiff for $20 for improvements, and against the estate of Benjamin Falk, his warrantor, $360, the purchase price of the land; to John Weber for $120, for improvements; to Eva Weber, $100; to Mary Weber, $75, — and ordered, further, that plaintiffs’ right to rents and revenues, and defendants’ right to reimbursement for taxes paid, be reserved.
From this judgment defendants prosecute this appeal.
Here the plaintiffs have answered the appeal, and ask that the judgment be amended by allowing them the rents and revenues claimed by them.
Opinion.
The tax sale attacked does not fall within the terms of the curative article No. 233 of the Constitution of 1898, as three years had not elapsed from the date of the adoption of the Oonstitution to the date suit was brought.
In all tax laws a description of the property is required. We know of no curative statute that has undertaken to cure irregularities and illegalities in sales made absolutely without description. The state acquired no title by the asserted forfeiture, and could transfer none. The buyer did not obtain a sufficient conveyance. The deed would not have been sufficient, in a conveyance between individuals. There must at least be some attempt made at describing the property.
It is true that there was provision in the tax statute at the time to sell lands in the name of an owner unknown, but no provision was ever made to enable the assessor and collector to assess land without any description — as, for instance, as in this case, “boundaries unknown.”
Furthermore, it does not appear that the land was sold for the taxes of any particular year, or whether the amount of the adjudication covered the .taxes of one or several years.
Land was returned to the state as forfeited for the taxes of 1S73, assessed in the name of Cooper and Robins, without boundary. It was redeemed, as before stated, in the statement of the facts. It can afford no basis for a title. We imagine that the forfeiture intended was for the taxes of 1877, as the taxes of that year are mentioned in the proceedings for a monition.
Defendants stoutly invoke the monition proceedings and the judgment homologating the monition. They are as defective as the proceedings the monition sought to cure.
The proceedings for the monition show that land was sold for the payment of taxes, but they do not establish what land was meant. The judgment of monition is as silent regarding the description as the deed is.
The land in controversy in Dodeman v. Barrow, 10 La. Ann. 194, had been described and adjudicated as “a certain tract or parcel of land situated in the parish of Assumption, measuring six arpents, more or less.”
This court said:
“The sale was unquestionably invalid, by reason of the uncertainty of the thing sold; no metes and bounds being stated, and no description of six arpents whatever being given, save that they were in the parish of Assumption, and belonged to Martial Dodeman. What authority had the purchaser to enter upon the tract?”
In the cited case the district court, in monition proceedings, attempted to identify the tract. In the case before us for decision, no such attempt had been made, and therefore it is not incumbent upon us to determine *479 what would have been the effect of such-an attempt.
The judgment obtained in the monition proceedings in the cited case was pleaded as res judicata. The plea was overruled, and the court held that the invalidity would not be cured by monition. Under the authority of that decision, the plea of res judicata in our ease is overruled. This brings us to a consideration of the prescription of 10 years— the time that had elapsed after the purchase by Martin Weber, and the time that- had elapsed after the purchase by Benjamin Falk of two-tliirds of the property in 1887.
Neither Martin Weber nor Falk had a title upon which to base the prescription of 10 years. The latter (Falk) was not- a third person in matter of the asserted sale. The sale was made to him by Martin Weber, in order to carry out a prior agreement regarding the land. The description, or, rather, the lack of description, in his deed, is the same as in the tax deed. He bought without reference to any boundary whatever. The boundaries, the deed declares, were unknown, and the recitals set out that it is the same land which the vendor had bought at tax sale. From the testimony the inference arises that this buyer knew of the first sale. The defects were as patent when he bought as when his vendor bought. Ten -years’ possession suffices to sustain. acquisitive prescription to immovable property, when it is colored with a just title — a title translative of property.
The asserted titles before us cannot be considered as having the effect of transferring property. As these parties had no title to transfer property, they must return the property to the possession of plaintiffs, who are the owners.
Good faith is another element in matter of this prescription. Whether these parties were or were not in good faith cannot change the result as relates to the title. It is null.
The district court having decided that rent is due by these purchasers, and having reserved plaintiffs’ right to recover rent in another suit, and plaintiff having moved here to amend the judgment so as to recover the amount of rental, we deem it essential to pass upon the question whether plaintiffs are entitled to the rents they claim.
We have reviewed the testimony on this point, and arrived at the conclusion that the vendee of the state at tax sale acted more-from want of information than in bad faith.
Manifestly', for years the legislature has sought to create conclusive presumption regarding tax sales in order to compel owners to pay their taxes. The statutes before us, and of which we take notice, teem with expressions to that end. It has been sought to insert and read into every sale for taxes language to cure all defects and make them legal. This sale was ordered by competent authority. The buyer is not necessarily in bad faith, as relates to rents, under the circumstances here. He bought the property, went into possession, paid the taxes, and considered it his own for years.
A tax title is different from an ordinary title. It is prima facie valid, and protects the purchaser at tax sale from imputation of bad faith.
It must be borne in mind that the owners remained indifferent, paid no taxes, and gave themselves not the least concern. We do not think it would be just for them to recover rents. Equitable consideration must enter into the issue here. The buyer had no cause to suspect before the suit was instituted that he was indebted for any rent. Moreover, this case is exceptional.
Plaintiffs’ position is incongruous, when they contend against the tax sale and against the ten-years prescription. They urge that the buyer at this tax sale (Martin Weber) did not go into imssession.
On the other hand, when they claim rent, they urge their cause as if this defendant had been in possession from the date of sale.
Necessarily, plaintiffs’ claim was on a quantum meruit. The testimony does not show that the purchaser at tax sale has been benefited in the least.
Plaintiffs have not been deprived of the opportunity to make a profit on the place, for they do not seem to have given themselves any concern about the land until recently, when enhancement in values made it an object. Nothing shows that this defendant has ever made any profit on this land. The state has acted in good faith. She has not been guilty of any trespass or the least wrong.
Usually, in sales, the buyer becomes invested with the good faith of his vendor.
*481 Again, the judge of the district court, dismissed the demand for rent, and reserved plaintiffs’ right to recover it on the ground that the testimony did not sustain the claim.
Plaintiffs, on appeal, renew their demand, and ask that judgment be amended. They press their claim on testimony which does not invest it with sufficient merit to base a judgment.
We desire to have it well nnderstood that this applies to rent only, and we have nanght to do at this time with products of the place and other fruits falling within the definition of commentators, to which we will refer in a moment. A buyer might not have to pay rent, but be held for taking or disposing of property under the guise and protection of a tax sale.
This view finds some support in Davenport v. Knox, 35 La. Ann. 487. Moreover, jurisprudence under laws nearly similar to our own upon the subject sustains the cited decision and our view of the matter. In those respects that the Louisiana law upon the subject differs from the French law, ours is equally as favorable to the evicted possessor. A distinction is observed by the commentators, from whose works we quote, between the acquisition of the fruits, and the acquisition of the immovable by which they are produced:
Defects are of form or of substance. With regard to a title null as to form, art. 2269, manifest that it cannot serve as a basis to usucaption (the essentials of which are a just cause and good faith). Can the possessor invoke it to prove his good faith, to the end of acquiring the fruit? Doctrine and jurisprudence answer in the affirmative. It is, it is said, the difference between acquisition of the fruits and the prescription of ten years. (The parenthesis is ours.)
Usucaption relates principally to a question of law. The acquisition of the fruit, on the contrary, depends more particularly upon a question of fact.
“Le vice peut concerner la forme ou le fond. Quant au titre nul en la forme, T article 2269 porte qu’il ne peut pas servir de base á l’usucaption. Le possesseur, peut-il l’invoquer pour établir sa bonne foi á l’effet d’acquerir les fruits? La doctrine et la jurisprudence répondent affirmativement: C’est, dit-on, une des differences qui existent entre ^acquisition des fruits et la prescription de dix ans.” Laurent, vol. 6, § 211, p. 282.
“L’usucaption souléve principalement une question de droit; l’acquisition des fruits, au contraire, dépend surtout d’une question de fait.” Demolombe, vol. 9, p. 529.
The facts are here that the buyer was not in possession, knowingly, of the property of another.
It is of little consequence, moreover, that the title invoked by the possessor be null, and that he might easily have discovered the nullity, if as a matter oí fact, he ■was unaware of it.
“Peu importe encore d’ailleurs que le titre dont se prévaut le possesseur soit nul, et que celui-ci ait pu facilement reconnaitre cette nullité, si en fait, il l’a ignorSe.’* Fuzier-Herman, vol. 1, p. 726.
We have verified this note with the decision in the Dute-Etinne Case, Journal du Palais, Paris, January 10, 1863, p. 133.
It is a controverted, question, perhaps, as relates to the general principle. We think the view has bearing upon possession, as in this ease, in the matter of tax sale. It is only to that extent that we apply the principle.
We have considered the testimony regarding rent of the land. It varies from a very low estimate to as high as $3 per acre. We think that $2 an acre is a reasonable amount.
Before leaving the case, we considered the exception of want of tender pleaded by defendant. It has no merit, and was properly overruled.
The law and the evidence being in favor of plaintiffs, the judgment appealed from is amended by striking therefrom all reservation to plaintiffs to the right to recover rents and revenues, and by adding thereto that defendants, who are creditors of plaintiffs in matter of the property in question, shall remain in possession until paid.
It is further amended by allowing rent at the rate of $2 per annum an acre in favor of plaintiff against defendants, respectively, on the quantity of acres each owns, to be computed at that rate per annum (as to each owner) from the date of service of citation on each of the owners. In every other respect the judgment is affirmed at appellees' costs.
The CHIEF JUSTICE and Mr. Justice MONROE concur in so far as the judgment decrees the nullity of the titles attacked, and dissent in so far as the plaintiffs are denied the right to recover the revenues of the property.