THOMPSON, J.
 

 This suit is to recover 30 acres of land, the chief value of which is its sand and gravel deposits. The respective claimants trace title to a common author, Major Thomas McGuire, who appears to have acquired 114 acres at different times, and from different parties.
 

 On May 13, 1878, McGuire sold the several tracts, including the 30 acres involved, to J. B. Wolfe & Co.
 

 The land was assessed to Wolfe & Co. for 18SS, under the following description:
 

 “One hundred and fourteen acres, known as Thos. McGuire place about one and a half miles from Trenton, lying on both sides of Claiborne road.”
 

 The taxes not having been paid, the land was adjudicated to .John H. Noble on June 15, 1889.
 

 It does not appear whether Noble took possession under his tax purchase, but he sold the land to W. L. Morris on December 3, 1892. Morris took possession, under his purchase, of the northern portion of the land; that is to say, that portion north of the public road known as the Claiborne road. He cleared a portion of this land and built a house thereon, which he rented and after-wards sold to one Jack Freeman.
 

 That part of the land south of the public road, which includes the 30 acres in dispute,, was never in the actual possession of Morris otherwise than under the doctrine that the possession of a part includes the possession of the whole, covered by the deed. He never had the land surveyed, and says himself that the only acts evidencing possession was to ride around over the land and to. look at it and supervise it, and had two people to look over it to prevent timber trespass.
 

 On May 17, 1905, Thomas McGuire sold the 30-acre tract to his son, Manning McGuire, and the latter on November 13, 1916, sold to S. T. Hankins. On August 23, 1922, Han-kins sold to E. G. Calvert, and Calvert,’ on the same day, sold to Mrs. F. P. Heard.
 

 - On September 20, 1922, Mrs. Heard entered‘into a contract with T. E. Stephenson to mine and excavate the sand and gravel from the land, and Stephenson assigned all
 
 *659
 
 of his rights to the Monroe Sand & Gravel Company on May 29,1922.
 

 The plaintiffs in support of the tax title invoke the constitutional limitation of 3 years.
 

 The defendants, to meet this, assert that the description of the land in the assessment was so radically defective that it could not form the basis of a ■ valid tax sale, and hence such sale could not be cured by the statute of limitation.
 

 The defendants further pleaded the prescription of 10 years, supported by actual possession under titles translative of property.
 

 This plea was sustained by thé trial judge and plaintiffs’ demand was rejected.
 

 ' The judgment also decreed Calvert to be the owner of the land, although Calvert’s answer to the call in warranty alleged that he had sold the land to Mrs. Heard, and the deed in evidence shows that fact.
 

 However, as Calvert and Mrs. Heard are both appellees, we have no authority to change the judgment in that respect, should we decide to affirm the judgment as against the plaintiffs.
 

 We agree with counsel for plaintiff that only two questions need be considered; (1) The plea of prescription of 10 years filed by defendants; and (2) the validity of the tax sale upon which the plaintiffs rely.
 

 We shall discuss these questions in reverse order from that in which they are treated in plaintiffs’ brief, since, if we should find the plea of prescription of 10 years good, it will not be necessary to inquire into the validity of the tax sale.
 

 On the other hand, whether we should find the tax sale valid or invalid, we would still be required to determine the plea of prescription.
 

 It is conceded that the purchase by Han-kins from Manning McGuire on November 13, 1916, was made in good faith on the part of Hankins.
 

 And it is admitted that Hankins took actual possession of the property, and that such possession continued in him and subsequent purchasers down to the institution of this suit, covering a period of something over 6 years.
 

 It is contended, however, that Hankins’ author in title never had such possession of the property as could form the basis for the beginning of the prescriptive period, and, further, that Manning McGuire was not a purchaser in good faith, and that the title he obtained from his father was not on its face translative of property.
 

 The deed recites that the consideration of the sale was $1 cash and valuable services rendered by the said Manning McGuire to his father, and on the trial of the case Manning McGuire testified: That he had been informed by an employee in an abstract oflice that the title to certain land in section 29 was in his father. That, as a result of his investigation, he was of the opinion that the land belonged to his father; otherwise, he would not have bought it. That the home property was put in the name of Major Jones for protection.
 

 That there was an account for $800, which he claimed belonged to him, and that Jones contended that it belonged to the property. That in the end he got the land in settlement of the $800.
 

 There is no evidence in the record to disprove the statement made by McGuire as to the consideration, and we are justified in accepting it as true.
 

 The rule is well settled that the real and true consideration may be shown where a consideration is expressed, even though such consideration be different from the one expressed in the instrument.
 

 The title on its face was valid in point of form and was translative of property. There was nothing on the face of the instrument to show want of good faith in Manning
 
 *661
 
 McGuire and certainly nothing .to indicate that his father did not own the property at the time. The reference to the deed under which Thomas McGuire acquired could not be said to have furnished notice that the title the son was getting was defective. The deed to which reference was made described the land by boundaries and as being in the same quarter section in which the land in dispute is located.
 

 While it is true the deed concludes with the statement that the tract contained 10 acres, no one could tell from the description that there was not as much or more than 30 acres.
 

 We repeat, however, that such a deed did not on its face show that Thomas McGuire did not have title to the land in dispute, nor was it sufficient to impute bad faith to Manning McGuire.
 

 The evidence shows conclusively that Manning McGuire, shortly after his purchase, caused a survey to be made, showing the boundaries of the land.
 

 He caused to be cut and cleared a right of way for a fence around the entire property. He sold all of the pine timber on the land, which during a period of 2 years was cut and removed from the land. He cut and removed from the land some 500 cords of wood, and sold it to the ice factory in West Monroe. All of which acts of possession and ownership were open and public and to the knowledge of the plaintiff.
 

 Mr. Morris admits that he knew that Manning McGuire claimed to own this 30 acres from the time of his purchase down to the time he sold to Hankins. He knew that Mr. Hankins had cleared. a part of the land, moved on it, and claimed it as owner. He never, at any time, claimed the land or protested against the claim of ownership on the part of McGuire or Hankins.
 

 While this silence on the part of Morris with full knowledge of the claim of ownership by McGuire and Hankins may not be sufficient in law to operate an estoppel in view of the claim of Morris that he never knew that he owned the land until an abstract title, was made, still it tends strongly to support the good faith of McGuire, and to show that his pretensions of ownership were open and public, with no attempt or purpose to conceal the fact from the public.
 

 These distinct acts of possession on the part of McGuire were inconsistent and incompatible with any claims or right of ownership on the part of any one else.
 

 The surveying of the land, the marking of the boundaries for a complete fencing of the land, and the daily removal of the cord-wood and the merchantable pine timber, covering a period of some 4 years, in our opinion, were sufficient in law to establish that actual corporeal possession required as a basis for the 10 years’ prescription.
 

 The counsel for plaintiffs admit that, if McGuire was in good faith, if the deed he acquired from his father was valid in form and translative of property, and if there has been 10 years adverse actual possession of the property, then the ease is clearly with defendant.
 

 Our examination of the record satisfies us that all of the stated essentials are established by the evidence.
 

 This view of the case renders it unnecessary to inquire into the validity of the tax sale relied on by the plaintiff or to discuss the plea of estoppel filed by the defendant in this court.
 

 The judgment appealed from is affirmed, at the cost of plaintiffs and appellants.