## MORRIS et al. v. HANKINS et al.
### No. 5608.

Court of Appeal of Louisiana. Second Circuit.

June 30, 1938.

Rehearing Denied Nov. 4, 1938.

Writ of Certiorari and Review Granted Jan. 10, 1939.

Theus, Grisham, Davis & Leigh, of Monroe, for appellants.

Shotwell & Brown, W. F. Pipes, Dhu Thompson, W. D. Moore, C. T. Munholland, and H. D. Montgomery, all of Monroe, for appellees.

DREW, Judge.

In August, 1923, the present plaintiffs, who are W. L. Morris and his three children, issue of his marriage with his first wife, now deceased, filed two suits in the Fourth District Court of Ouachita Parish, Louisiana, claiming title to certain property in Section 29, Township 18 North, Range 3 East. The first of those suits was docketed as No. 12,085 of that court and sought to assert title in the plaintiffs to the south 30 acres of the SE¼ of SE¼, Section 29, Township 18 North, Range 3 East. That

suit was brought against the Monroe Sand & Gravel Company, Inc., and it was thereafter tried and decided adversely to the plaintiffs. The case was appealed to the Supreme Court and the adverse judgment was there affirmed on June 4, 1928, the Supreme Court decision being reported as Morris v. Monroe Sand & Gravel Company, Inc., 166 La. 656, 117 So. 763.

At the same time, August 18, 1923, the plaintiffs filed in that court suit No. 12,086, which is one of the suits now before this court. This suit sought to assert title to the north 10 acres of the SE¼ of SE¼ of Section 29, Township 18 North, Range 3 East, and to some 18 or 20 acres of land lying on both sides of the Dixie-Overland Highway in the NE¼ of SE¼ of Section 29, Township 18 North, Range 3 East. S. T. Hankins, D. F. Dennis and W. F. Wall were the defendants in this suit, each being made defendant for the portion of the property claimed by him. In this suit a money judgment was sought against D. F. Dennis and W. F. Wall for timber alleged to have been unlawfully removed by them from the property in contest, and, on the theory that there was no solidary obligation between the three defendants, S. T. Hankins filed an exception of misjoinder, which was sustained and the suit dismissed. An appeal from this judgment was taken by the plaintiffs to this court (No. 2224 on its docket), which affirmed the judgment as to Hankins, but since no exceptions of misjoinder had been filed by Wall and Dennis, the judgment was reversed insofar as it dismissed the suit altogether, and the case was reinstated and remanded for trial as to Dennis and Wall. This judgment was rendered by this court on May 9, 1925, and is reported as Morris v. Hankins. 2 La.App. 199.

Now, in suit No. 12,086, it had been alleged that defendant Hankins was claiming the north 10 acres of the SE¼ of SE¼ of Section 29, Township 18 North, Range 3 East, and all that portion of the NE¼ of SE¼ of the same section lying south of the Claiborne road, and since this suit had been dismissed as to Hankins, a new one, No. 18,037 (No. 5609 in this court, 185 So. 525) was filed on April 9, 1930, to assert title to this property. However, in the meantime, the first suit, No. 12,085, had been finally decided in the Supreme Court and, since in that suit plaintiffs' asserted title to the SE¼ of SE¼ of Section 29, Township 18 North, Range 3 East, had been finally rejected before the new suit was filed, that portion of plaintiffs' claim was omitted and the new suit, No. 18,037, only sought to assert title to that portion of the NE¼ of the SE¼ of Section 29, Township 18 North, Range 3 East, lying south of the Claiborne road, or Dixie-Overland Highway. Also in the meantime, Hankins had sold the larger portion of this property to other parties and the defendants in suit No. 18,037 (No. 5609) are the vendees of Hankins and the claimants of this property at the time that suit was filed in April, 1930.

It will thus be seen that while the first of these suits (No. 5608) describes and claims 10 acres in the SE¼ of SE¼ of this section, that particular property has passed out of the picture altogether and plaintiffs are now asserting title only to the land in the NE¼ of SE¼ of the section. Suit No. 5608 involves some 12½ acres lying north of the Dixie-Overland Highway and 5609 involves some 6 acres lying south of the Dixie-Overland Highway, but none of the property now in litigation extends below the NE¼ of SE¼ of the section.

Except for the necessary changes attendant upon the differences in the properties and defendants, the petitions in both suits are the same. Plaintiffs allege they are the owners of the property by the following chain of title: 1. Severance from the public domain; 2. J. B. Wolfe & Company by Tax Collector to J. H. Noble, dated June 15, 1889; and 3. John H. Noble to W. L. Morris, dated December 3, 1892; and in addition to this chain of title, they plead the constitutional limitation of three years in aid of their tax title and the prescription of ten years acquirendi causa. The petitions make the usual allegations of a petitory action as to the possession of each defendant and its unlawful character, especially attack certain of the deeds from which defendants' titles emanated and pray for judgment recognizing plaintiffs as owners of the property, placing them in possession thereof, and quieting their title thereto.

The answers of the various defendants, while differing in more or less minor particulars, are in the main the same. The answers admit possession in each defendant of the particular property attributed to him, deny plaintiffs' title and aver title in the defendants and specially attack the tax deed which is the foundation of plaintiffs' title. Exceptions of no cause or right of action were filed by each defendant and certain

defendants filed pleas of estoppel and res judicata.

Suit No. 5608, it will be remembered, originally embraced all of the land now in litigation and included S. T. Hankins as a defendant, along with Dennis and Wall, but, it was afterwards dismissed as to the land south of the Claiborne road, then claimed by S. T. Hankins, so as the suit now stands it only covers the land north of the Claiborne road and the only defendants are D. F. Dennis and W. F. Wall. Hankins was called into the suit as warrantor to defend the title of Dennis, but he is concerned in this particular suit only as warrantor and not as a principal defendant.

The petition alleges that W. F. Wall is in possession of the following described property: "All that portion of the E½ of the SE¼ of Section 29, Township 18 North, Range 3 East, which lies between a north and south line from the southeast corner of the property now owned by W. F. Wall, in the above section, township and range, to the Claiborne road, and the west line of W. F. Wall projected in a southerly direction to the Claiborne road, said tract of land being bounded on the north by the property now owned by W. F. Wall, east by the land in the possession of S. R. Hankins, south by the Claiborne road, and west by the property of A. O. McCormick;" and that D. F. Dennis is in possession of the following described property: "All that portion of the NE¼ of SE¼ of Section 29, Township 18 North, Range 3 East, lying between the north line of Claiborne road and the south line of the property owned by W. L. Morris, said tract containing 9½ acres more or less;" and each defendant specially admitted his possession of these respective tracts.

These descriptions are somewhat indefinite but that indefiniteness can have no effect upon the present suit because it having been alleged that each defendant was in possession of a particular tract, and each defendant having admitted his possession of the tract alleged, it can make no difference, for the purposes of this suit, just where the particular tracts are located. That question might arise in a boundary suit, but not where the title alone is involved.

Plaintiff's title emanates in a tax deed executed in the name of J. B. Wolfe & Company by J. E. McGuire, Tax Collector, to John H. Noble on June 15, 1889, for the taxes of 1888. In this deed the land is described as follows: "One hundred and fourteen (114) acres known as Thomas McGuire place about one and a half miles from Trenton lying on both sides of Claiborne road;" and the consideration therefor was a sum of $9.19, being the amount of taxes, interest and costs due by J. B. Wolfe & Company for the year 1888. This tax sale was attached by defendant Dennis on the following grounds: 1. That the land was erroneously described; and 2. That the sale was made to the last and highest bidder in violation of law.

And S. T. Hankins, having been called in warranty by Dennis, attacked this tax sale on the following grounds:

1. That there was no legal assessment on which the sale could be based;

2. That the land was not susceptible of identification;

3. That the assessment embraced lands not owned by the purported tax debtor and there was no notice to the actual owner, as required by law;

4. That the lands embraced in the assessment were separated into different tracts, which were offered for sale together, in violation of law;

5. That the sale was made to the last and highest bidder in violation of law; and

6. That the purported tax debtor never owned all of the McGuire place and there was therefore no legal assessment to form the basis of the purported tax sale.

Defendant Wall made practically the same attack upon this tax sale as set out above, but alleged further that all taxes had previously been paid on the land which he is claiming, and that as to his land, the sale was a nullity by reason of this prior payment of the taxes. Wall's defense presents issues which are not altogether the same as those involved in the Dennis title, so we shall pass his defense for the time being and confine this particular discussion to the Dennis land.

On the morning of the trial, Dennis filed a supplemental answer in which he further attacked this tax sale on the following grounds:

1. That there was no legal assessment on which a sale could be consummated, and that the land sold was not specially described, and was not susceptible of identification;

2. That the assessment included lands owned by third persons, and no notice was

given to the actual owner, as required by law; and

3. That a part of the property claimed by plaintiff to constitute the McGuire place was duly assessed and the taxes paid thereon for the year 1888 prior to this tax sale.

And at the same time warrantor Hankins filed an amended answer in which he further attacked this tax sale on the ground: 1. That for the year 1888 the E½ of the SE¼ of Section 29, T. 18 No., R. 3 E., was assessed to Moore and Millsaps, and the taxes paid thereon prior to this tax sale, and that this constituted a dual assessment and prior payment of taxes which renders the tax sale to John H. Noble wholly null and void.

Plaintiff specially pleaded and invoked in aid of his tax title Article 233 of the Constitution of 1898, and under the sweeping terms of these provisions in the Constitution of 1898, no tax sale, after the lapse of three years from its date or as to sale theretofore had, after the lapse of three years from the date of the adoption of that Constitution (May 12, 1898), may be attacked for any reason except: 1. Dual assessment; and 2. Prior payment of the taxes for which the sale was made.

However, in construing this provision, our Supreme Court has held that this limitation constitutes a prescription liberandi causa, and that its running is interrupted or arrested so long as the tax debtor is permitted to remain undisturbed in the actual corporeal possession of the property sold. Carey et al. v. Cagney et al., 109 La. 77, 33 So. 89; In re Seim, 111 La. 554, 562, 35 So. 744; Baldwin Lumber Company v. Dalferes, 138 La. 507, 70 So. 493; Head v. Howcott Land Company, 119 La. 331, 44 So. 117, and In re Sheehy, 119 La. 608, 44 So. 315.

And further, the same court has also held that this constitutional limitation or prescription must have as its basis a tax sale (whether valid or invalid, it makes no difference) and, therefore, that such a defect as strikes at the existence of the tax sale itself—as for instance, where the property was not sufficiently described to permit of identification—is not protected by this three-year limitation. Guillory v. Elms, 126 La. 560, 52 So. 767; Landry v. McWilliams, 135 La. 655, 65 So. 875; Fellman's Heirs v. Interstate Land Company, 163 La. 529, 112 So. 405, and Hirst v. Xeter Realty, 138 La. 398, 70 So. 339.

Thus, in addition to the two causes specifically mentioned in this constitutional provision, the Supreme Court has read into it but two other causes or conditions as being sufficient to interrupt or defeat the prescription provided therein, viz: 3. Where the tax debtor is permitted to remain in the actual corporeal possession of the property sold; and 4. Where there is such a defect as strikes at the existence of the tax sale.

Unless defendants have brought their attack on plaintiff's title within one or more of these classes, then the tax title must prevail. This is made perfectly clear by the following expression of our Supreme Court in the case of Weber's Heirs v. Martinez, 125 La. 663, 51 So. 679, 680:

"The sale to the state, which constitutes the basis of the defendant's title, was made, as we have stated, on March 14, 1885, and was recorded on August 29th of the same year, nearly 13 years before the Constitution was adopted; and this attack was not made upon it until May 6, 1908, some 10 years after the adoption of the Constitution. The attack is therefore barred by the prescription established by the Constitution, unless found to be within either one or the other of the exceptions thereby established, or within some exception, held by this court to be necessarily implied therefrom. It has been held that it is immaterial for the purposes of the question to be here determined whether an assessment has been made in the name of one person or another, or in no name, or whether the owner, not in possession, has been notified of the intention to sell or has not been notified, or whether the sale has been advertised, or has not been advertised. Canter v. Williams' Heirs, 107 La. 77, 31 So. 627; Crillen v. New Orleans Terminal Company, 117 La. 349, 41 So. 645; Little River Lumber Company v. Thompson, 118 La. 284, 42 So. 938.

"As to the plaintiff's allegation that no taxes were due, the answer is that it being admitted that none were paid, and it not being pretended that the property was exempt, the taxes were necessarily due, provided there was an assessment, and the tax debtor is barred by the constitutional prescription from contesting the fact of the assessment, save in connection with the assertion that the description in the tax deed and in the assessment fails to identify the property."

Defendants also pleaded the prescription of ten years acquirendi causa.

The lower court, on May 22, 1937, nearly 14 years after the suit was filed, rendered judgment rejecting plaintiff's demands. An appeal has been prosecuted to this court.

■ In a petitory action the plaintiff must stand or fall upon the strength of his own title and not upon the weakness of his adversary's title. We will therefore first discuss the title relied upon by plaintiff, which is based, so far as this suit is concerned, upon the tax title from J. B. Wolfe & Company by J. E. McGuire, Tax Collector, to John H. Noble, of date June 15, 1889, for the unpaid taxes of 1888. The record discloses that the property was seized, advertised and sold under the following description: "One hundred and fourteen (114) acres known as Thomas McGuire place, about 1½ miles from Trenton, lying on both sides of Claiborne road.

The tax deed states that the sale is made under the provisions of Act No. 85 of 1888. Section 7 of that Act, setting out the duties of the assessor with reference to the description of immovable property assessed, reads as follows: "That if the land to be assessed be a tract or a lot known by a name, or if the owner's name be known, it shall be designated by those particulars and by its boundaries; if it has no name or the name be unknown, it shall be designated by its boundaries, or by divisions, pursuant to the United States surveys. In all cities, towns or villages, it shall be the duty of the assessor to designate the number of the lots according to the plan of such cities, towns or villages, or according to the plat or plan of the squares designated by such particular plat or plan. If no plat or plan is known of any city, town or village, or square within the same, it shall be lawful for the assessor to describe it by boundaries of the streets within which it is situated, giving, in all cases, the dimensions; that assessments in incorporated towns and villages shall be in separate columns, and shall designate the name of the streets on which the lots front."

Section 18 of the same Act provides:

"That the tax assessor shall fill up the column for valuation with such valuation of each item of property as he considers just, and if any person shall fail or refuse to sign one of the said tax lists within the time prescribed by law, the tax assessor shall obtain his name, ward, street, number and post office address, and a full description and valuation of all the property of said person, in whatever way he can, and shall himself fill out said lists from the best information he can obtain, and shall fill up the column with his own valuations; and to that end he is authorized to administer oaths and to propound questions to any person whom he supposes can give information in relation thereto. In making all assessments it shall be the duty of the assessor to give a correct and accurate description of each piece of property assessed, and to assess the same in the name of the owner, except in cases of unknown owners, and it is hereby made his special duty to examine into assessments that have been carried over on the rolls from year to year without having been given in by the owners, and to see that all such property is assessed under a correct description in the name of the owners, and to that end he shall make all necessary inquiries as to the facts from any and all sources, and as to the law from the district attorney, whose duty it is to advise him in all such cases."

It is to be noted that in both sections of the Act quoted, in providing the manner in which the assessment is to be made and how the assessor is to acquire the necessary information, the word "shall" is used. The two sections provide in unequivocal terms not only what is a legal assessment, but makes it the mandatory duty of the assessor to acquire the necessary information as to the correct owner and correct description, either by boundaries or government subdivisions; and it is our opinion that an assessment which did not comply with the above quoted sections during the existence of Act No. 85 of 1888, is null and void, and a tax sale made under the null assessment by the same description which rendered the assessment null, is likewise null and void and without legal effect as a legal transfer of real estate.

■ The description in the assessment of J. B. Wolfe & Company's property for the taxes of 1888 did not comply with the mandatory provisions of Act No. 85 of 1888, Sections 7 and 18, in that the property was not described by government subdivisions or by boundaries. It was therefore null and void, and the tax sale made thereof on June 15, 1889, by the sheriff to John H. Noble was null and of no effect. The description may have been sufficient under the law in effect now. Act No. 106 of 1890 amended Sections 1 to 33, inclusive, of Act No. 85 of 1888. However, section 8 of the amending Act contains the

same provisions provided for by section 7 of the 1888 Act. The same legislature for the year 1890 also passed Act No. 140 of that section which materially changed and repealed those parts of Act No. 85 of 1888 and Act No. 106 of 1890 dealing with assessments and tax sales, as provided by sections 7 and 18 of the 1888 Act and section 8 of Act No. 106 of 1890. Act No. 140 of 1890 provides as follows:

"That for the purpose of taxation and tax sales it shall be sufficient to assess and describe all property according to such a description as will reasonably identify the property assessed; such as designating the tract or lot by the name by which it is commonly known, or by the number or letter by which it may be usually designated upon the regular assessment rolls, or upon an official or private plan or sketch or by giving the boundaries or the name of the owners upon each side, or by the dimensions or description or name given in the act translating the ownership thereof, or by such other further description as may furnish the means of reasonable identification.

"Section 2. * * * That for the purposes of taxation and tax sales it shall be sufficient to assess and advertise all property in the name of the person or persons whether dead or alive, who at the time the assessment was made, appeared to be the owners thereof upon the books of the conveyance office, in the parish of Orleans, or of the Recorder's offices in the other parishes of the State; but all property may be assessed in the name of the real owner, and if held in trust, in the name of the fiduciary, as such.

"Section 3. * * * That no assessment or tax sale shall be set aside or annulled for any error in description or measurement of the property assessed, in the name of the owner, provided the property assessed or sold can be reasonably identified.

"Section 4. * * * That the tax sale shall convey and the purchaser shall take the entirety of the property, neither more nor less, intended to be assessed and sold and such as it was owned by the delinquent taxpayer, regardless of any error in the dimensions or description of the property assessed and sold and the tax collector in the advertisement or deed of sale may give the full description according to original titles.

"Section 5. * * * That this act shall apply to the assessment and tax sale of all property for State, parish and municipal taxes."

It is to be noted that in this Act the word "may" is substituted for the word "shall" in the prior Acts. However, since the property in question was assessed for the year 1888 and sold for failure to pay taxes in 1889, under Act No. 85 of 1888, the validity of both the assessment and sale must be determined by the provisions of that Act. Cases arising since 1890 stand upon a different footing than those coming before, due to the provisions of Act No. 140 of 1890; Millaudon v. Gallagher, 104 La. 713, 29 So. 307; and account for the two lines of decisions found in the Reports of our state, one of which determines the legality of assessments and tax sales by the provisions of Act No. 85 of 1888, and the other line applying the law as provided in Act No. 140 of 1890. For example, up until 1890 the Supreme Court of this state uniformly held that a tax sale made in the name of a dead person was an absolute nullity. Stafford v. Twitchell, 33 La.Ann. 520; Jackson v. Wren, 36 La.Ann. 315; Kerns v. Collins, 40 La.Ann. 453, 4 So. 498, and Edwards v. Fairex, 47 La.Ann. 170, 16 So. 736.

And since that date it has held that a tax sale made in the name of a dead person is valid. Succession of Williams v. Chaplain, 112 La. 1075, 36 So. 859; Federico v. Nunez, 173 La. 957, 139 So. 18; Geddes v. Cunningham, 104 La. 306, 29 So. 138.

One of the decisions of our courts relative to the requisites of a legal assessment prior to Act No. 140 of 1890, is, Gulf State Land & Improvement Company v. Succession of Fasnacht, 47 La.Ann. 1294, 17 So. 800, wherein the Court said [page 801]: "The requisites of an assessment are by its boundaries, or divisions of United States surveys."

The Revenue Act for the year 1847, section 26, contained the same provisions under the title of Assessments and Duties of Assessors as did section 7 of Act No. 85 of 1888. The legality of a tax sale under that Act was determined by the Court in the case of Woolfolk v. Fonbene, 15 La. Ann. 15, wherein it said:

"The lots in controversy were described, in the assessment by virtue of which they were adjudicated to the defendant, in the manner declared in the following extract from the notice or advertisement of sale, by the Auditor of Public Accounts.

" 'The following lots in square bounded by New Levee, St. James, Market and Tchoupitoulas Streets, and assessed in the following names, viz., Mrs. A. Woolfolk, 1 lot, 32 by 128, amount of taxes $4.80; 1 lot, owner unknown, 32 by 128, amount of taxes $4.80.'

"In this assessment, neither the number of the square, nor the number of the lot, is given, nor the name of the street on which the lots fronted, or were situated. The assessment is wanting in the particulars essential to a description and identification of the property assessed for taxes due the State, as required by the 26th section of the Revenue Act of 1847, p. 130, which requires the tract or lot of land assessed to be designated at least by its boundaries. In the assessment of the lots in question, their boundaries are not given at all. The boundaries of the square in which they are situated are not the boundaries of the lots. The description in the assessment would apply to any lot in the square bounded by the streets named, as well as to the lots in question. As the assessment was not made in the manner required by law, it was null and void, as authority on the part of the Tax Collector to sell, and cannot, therefore, form a basis of title in favor of the defendant. An illegality in the assessment of property for taxes, is a radical defect, and not a mere informality which may be cured by the lapse of five years from the date of the tax sale; and the prescription pleaded by the defendant is, therefore, not applicable to this case."

In the case of Thibodaux v. Keller, 29 La.Ann. 508, it was held that the assessment stands in lieu of a judgment. It is the foundation of all which follows and must contain an accurate and sufficient description of the property as required by statute, and the want of such description in either the assessment, advertisement for sale or in the tax title, is fatal to such title. Other decisions holding to the same view are, Wills & Rawlins v. Auch, 8 La.Ann. 19; Sutton v. Calhoun, 14 La.Ann. 209; Carmichael v. Aikin's Heirs, 13 La. 205, 210; Graves v. Hardesty & Harris, 19 La. Ann. 186.

Since plaintiff concedes that a tax sale which is a nullity, as we have found the sale by the sheriff from J. B. Wolfe & Company to John H. Noble to be, cannot form the basis for prescription—and that it is the law—it follows that the said pretended sale cannot be the basis for ten years prescription acquirendi causa by the tax purchaser.

This brings us to a consideration of the plea of prescription of ten years acquirendi causa pleaded by defendants herein, who purchased the property from the tax purchaser. Plaintiff acquired from the tax purchaser by cash notarial deed on March 29, 1893,—"The following described tract and parcel of land lying and being situated in Ouachita Parish, State of Louisiana, about four miles west of Trenton, lying on both sides of Claiborne road, known as the Thomas McGuire Place and containing 114 acres, more or less. It being the same property acquired by this vendor of J. E. McGuire, Deputy Sheriff and Tax Collector, on the 15th day of June, A. D., 1889, as per notarial book 30, folio 308."

The only difference in this description and that contained in the tax deed is that the property in the tax deed is described as being 1½ miles from Trenton, and in the deed to plaintiff it is described as being about four miles west of Trenton. Plaintiff bought from the tax purchaser without reference to any boundaries whatever, and the recitals in the deed are that it was the same land the vendor had bought at tax sale, giving the date of same, and the book and page number where said tax sale was recorded. The defects in the description were as patent when plaintiff bought as when his vendor bought and his deed is also a nullity under the authority of Cooper v. Falk, 109 La. 474, 33 So. 567, wherein the Court said [page 569]:

"This brings us to a consideration of the prescription of 10 years—the time that had elapsed since the purchase by Martin Weber, and the time that had elapsed after the purchase by Benjamin Falk of two-thirds of the property in 1887.

"Neither Martin Weber nor Falk had a title upon which to base the prescription of 10 years. The latter (Falk) was not a third person in matter of the asserted sale. The sale was made to him by Martin Weber, in order to carry out a prior agreement regarding the land. The description, or, rather, the lack of description, in his deed, is the same as in the tax deed. He bought without reference to any boundary whatever. The boundaries, the deed declares, were unknown, and the recitals set out that it is the same land which the vendor had bought at tax sale. From the testimony

the inference arises that this buyer knew of the first sale. The defects were as patent when he bought as when his vendor bought. Ten years' possession suffices to sustain acquisitive prescription to immovable property, when it is colored with a just title—a title translative of property.

"The asserted titles before us cannot be considered as having the effect of transferring property. As these parties had no title to transfer property, they must return the property to the possession of plaintiffs, who are the owners.

"Good faith is another element in matter of this prescription. Whether these parties were or were not in good faith cannot change the result as relates to the title. It is null."

We therefore find the plea of prescription of ten years urged by plaintiff untenable, and it is overruled.

The judgment of the lower court is correct and is affirmed with costs.