(41 South. 645.)

No. 16,033.

CRILLEN et al. v. NEW ORLEANS TER-
MINAL CO.

In re CRILLEN et al.

(June 4, 1906.   Rehearing Denied June 27,
1906.)

1. TAXATION—TAX SALES—SETTING ASIDE—
PRESCRIPTION.

Where vacant, uninclosed lots belonging to
a succession are adjudicated to the state for
taxes, and are thereafter assessed to the de-
ceased owner, and, later, to a purchaser, under
Act No. 82, p. 104, of 1884, who does not com-
ply with the terms of that act, and, still later,
are sold by the Auditor and the heirs of the
former owner in the meanwhile and during many
years, pay no taxes, and take no steps to be put
in possession, the fact that at one period the
property may have been occupied by a third
person with the alleged consent of such heirs
will not prevent the running of the prescription
against proceedings to set aside tax sales,
where it appears that, for three years prior to
the institution of such proceedings, the plain-
tiffs have not been in possession by corporeal de-
tention and have paid no taxes to the state.

2. SAME—ASSESSMENT—PRESCRIPTION.

Though property may have been assessed
in the name of one not the owner, a sale for
taxes, predicated on such assessment, falls,
nevertheless, within the meaning and opera-
tion of article 233 of the Constitution, and
will not be set aside, save in the cases specially
provided, unless the proceeding to annul be
instituted within the time prescribed by the
article.

(Syllabus by the Court.)

Action by John J. Crillen and others
against the New Orleans Terminal Company.
Judgment for defendant was affirmed by the
Court of Appeal, and plaintiffs appeal for
certiorari or writ of review. Application dis-
missed.

Francis Rivers Richardson, for applicant.
William Winans Wall and Miller, Dufour &
Dufour, for respondents.

Statement.

MONROE, J.   Plaintiffs sue for the recov-
ery of three vacant lots in New Orleans of
which they allege they are in possession, and
pray that their ownership be recognized,
and that the title of the defendant derived
through mesne conveyances from the state
of Louisiana be decreed null.   Defendant al-
leges that it purchased the property from
L. L. Stanton, with subrogation to his rights
of warranty, affirms the validity of its titles,
pleads prescription, and calls in warranty
the Aztec Land Company, Limited (Stanton's
vendor) ; and that company alleges that it
acquired title from the State Auditor, under
Acts No. 80, p. 88, of 1888, and No. 126, p. 181,
of 1896, and pleads the prescription of three
years, under article 233 of the Constitution.

It is admitted that James Crillen, of whom
plaintiffs are the heirs, acquired the property
in 1861, and it appears from the evidence
that he died on April 3d, and that his succes-
sion was opened on April 5, 1873; that the
property in question was inventoried therein,
and was again inventoried in the succession
of his wife, who died in February, 1875; that
in December, 1874, the property was for-
feited to the state for the taxes of 1873, and
in 1885 was adjudicated to the state for the
taxes of 1882, and that in 1893 it was sold,
under Act No. 82, p. 104, of 1884, to M. J. Lar-
kin, who failed to comply with the law under
which the sale was made, and in 1904 aban-
doned and quitclaimed the property to the
plaintiffs, who, in November, 1903, obtained
judgment, putting them in possession thereof
as heirs of James Crillen and his wife.   In
the meanwhile (in 1902) the property was
sold by the Auditor to the Aztec Land Com-
pany.   It further appears that from 1869 to
1893, inclusive, the property was assessed to
James Crillen, but that no taxes were paid on
it, either to the state or the city; that from
1894 to 1904, inclusive, it was assessed to
M. J. Larkin, and that no taxes, save those
of 1903, were paid to the state, and none to
the city—the taxes due the city, from 1898
to 1903, having apparently been canceled by
judgment of a city court.

The substance of the testimony and our
conclusion upon the question of possession
are as follows:

It has not been shown that plaintiffs were in actual possession, by corporeal detention, of the property at the dates either of the forfeiture, in 1874, the adjudication, in 1885, the sale by the Auditor, in 1902, or the bringing of this suit, in 1904. W. G. Tebault, a witness examined on their behalf, testifies that some 10 or 15 years prior to, say May, 1905, he inclosed the lots in question and other lots belonging to himself, with a fence, and kept his horses within the inclosure, but, finding, subsequently, that the horses did not thrive, he removed them; after which, it does not appear that he ever saw the property until he visited it for the purposes of this suit, when he found that the fence had entirely disappeared. Being asked as to the circumstances under which he thus took possession of the lots, and for whose account he held them, his answers, whether considered by themselves or in connection with other testimony, leave it a matter of doubt whether he took possession by permission of the owners, previously obtained, or without such permission, but with the expectation of obtaining it subsequently. Thus, in answer to the question, on direct examination, "Before building this fence, you obtained permission, as I understand, from Mr. Crillen," he answers, "Yes, sir," but, on cross-examination, he testifies as follows:

"Is it not a fact, Mr. Tebault, that you did not hold the property for anybody's account; that you simply needed it and had it fenced in? A. I asked permission. Q. What did he say to you at that time? A. He said, certainly, he was glad I had done so."

—From which it would appear that the permission was asked after the fence had been built, and that, prior to that time, the witness had been in possession without the knowledge of the owners, and, hence, had not been holding for their account. He was unable to say when the fence was built, save that it was 10 or 15 years prior to the time (May 29, 1905), at which he testified, and

was equally uncertain as to the time at which he ceased to use the property. Thus:

"Q. It don't exceed five years, does it? A. Oh, no, sir. Q. You are positive it don't exceed five years? A. I don't think so. * * * Q. Are you able to swear positively that you have had no stock in that place within the last five years? A. No, sir; I could not swear it positively; I believe I have, but I could not swear it as a fact."

Being asked when he gave up raising stock, and whether he kept any one on the place after that, he replied to the first question that he could not remember, and to the second, "Oh, no; after I left it, I had no need for anybody." J. J. Crillen (plaintiff) being asked, "Who was in possession of the property last summer," answered, "I cannot say, except that I understand that the railroad company is in possession of it." A witness who was called on behalf of the defendant testified that there was no fence or other sign of occupancy about the property in November, 1902. It is admitted that Tebault paid nothing, and agreed to pay nothing, for the use of the property, and it is shown that he left it (as we are inclined to think that he entered upon it) without the knowledge of the plaintiffs; and it is neither alleged nor shown that he or they paid any taxes whilst he occupied it. On the other hand, though the testimony of Crillen suffices to show that plaintiffs did not consider themselves in possession, there is no pretense on the part of defendant or warrantor that either of them was ever in actual possession. The sales by the Auditor to the land company, by the latter to Stanton, and by Stanton to defendant are proved. This suit was instituted in June, 1904, and tried in May, 1905, with the result that there was judgment for defendant, which was affirmed by the Court of Appeal, and it is the judgment of affirmance which we are now called on to review.

### Opinion.

When the present Constitution was adopted, the state held an apparent title to the prop-

erty here in question (resulting from the forfeiture, for the tax of 1873, and the adjudication for the tax of 1882), which, whatever may have been its defects, was not, so far as we are informed, obnoxious to the objections that it was based on either a dual assessment or an assessment for a tax which had been paid before the sale. It was, therefore, capable of being quieted and perfected, by prescription, under that provision of article 233 of the Constitution, which reads:

"No sale of property for taxes shall be set aside for any cause except on proof of dual assessment, or of payment of the taxes, for which the property was sold, prior to the date of the sales, unless the proceeding to annul the sale shall be instituted * * * within three years from the adoption of the Constitution, as to sales already made," etc.

The "proceeding to annul" which we are here considering was instituted more than six years after the adoption of the Constitution, and, by the terms of that instrument, is barred. It has been held that the law quoted is inapplicable (1) where the owner and tax debtor was at the time of the tax sale the actual possessor by corporeal detention of the property sold and has been allowed so to remain (Carey v. Cagney, 109 La. 77, 33 South. 89) ; and (2) where, after the sale, the state has continued to assess the property to the former owner, and to receive from him the taxes so assessed (Pitre v. Scheslinger, 110 La. 234, 34 South. 425). But in the case at bar neither of these conditions exists. It does not appear that the owner was in actual possession of the property here claimed, either when it was forfeited to the state, in 1874, or when it was adjudicated, in 1885, or that any one held such possession for 20 years after the forfeiture, and say 10 years after the adjudication, and, if the possession of Tebault be regarded as the possession of the owner, nevertheless, that possession had been abandoned for three years or

117 LA.—12

more, prior to the institution of this suit. Nor does it appear that the state, after the forfeiture and the adjudication of the property, continued to assess it to the former owner, and to receive from him the taxes so assessed. It is true that for a number of years the property was assessed to James Crillen, but neither he nor any one else paid the taxes so assessed, and thereafter the assessments were made in the name of Larkin who had made an incomplete purchase, under Act 82, p. 104, of 1884, but who acquired no title, by reason of his nonpayment of the taxes assumed by him as required by the provisions of that act. For three years prior to the institution of this suit there was, therefore, no interruption of the prescription established against it by the Constitution, whether by reason of the fact that the property was corporeally detained by the owners, or by reason of any estoppel resulting from the assessment and collection of taxes against and from those owners.

As the sufficiency of the tax title, to serve as the basis of the prescription established by article 233 of the Constitution, does not depend on the validity of the assessment (quoad the name of the owner) upon the basis of which the property is sold, it is immaterial, for the purposes of this case, whether the forfeiture and subsequent adjudication of the property here in dispute were based on assessments in the name of a person deceased or in the name of the real owners, the essential fact in that connection being that there was an assessment; that is, to say, a valuation of the property, without which the tax could not have been levied. Terry v. Heisen, 115 La. 1070, 40 South. 465.

It is therefore ordered, adjudged, and decreed that this application be dismissed at the cost of the applicant, and that the judgment which has here been made the subject of review remain undisturbed.