(42 South. 218.)

No. 16,175.

SHELLY et al. v. FRIEDRICHS.

(Oct. 15, 1906.)

1. TAXATION—NOT DUAL ASSESSMENT—PART OF DESCRIPTION SUFFICIENT — ANOTHER PART FATALLY DEFECTIVE.

In a suit to set aside a tax sale on the ground that the property was assessed twice for the taxes of the same year, and the further ground that the property was not described, it is held as relates to the asserted dual assessment that the assessment to another than the real owner does not release the owner from the payment of the tax due by him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 104.]

2. SAME—DESCRIPTION.

Where there is a good beginning of proof, three of the four boundary lines of a square having been given, and the fourth line is indicated clearly enough by the three given lines, it will be held a sufficient description. The lines of the description are sufficient to identify the property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 724.]

3. SAME—LOTS NOT DESCRIBED.

The remaining lots not sufficiently described for identification were not legally conveyed. The constitutional provision invoked does not cure the tax title, where the description is insufficient to identify the property.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred Durieve King, Judge.

Action by Mrs. Daniel Shelly and others against George G. Friedrichs. Judgment for defendant, and plaintiffs appeal. Modified and affirmed.

John Darling Nix and William Winans Wall, for appellants. Carl Converse Fredrichs and Frank McGloin, for appellee.

BREAUX, C. J. Plaintiffs, believing that defendant was slandering their title to land of which they claimed to be the owners, instituted a suit for slander of title.

After they had instituted their suit they found that defendant was in possession of the property. Thereupon they amended their original petition, and changed their suit into a petitory action in which they prayed to be recognized as the owners.

The following is a description of the land claimed in this petitory action:

"A certain portion of each of 23 squares or islets of land situated in the Second district of the city of New Orleans, comprised within Bayou St. John, Scott, and Brooks streets, and the property now or formerly belonging to the Canal Bank, and numbered on the city map 915 to 937 inclusive.

"Said portion of squares, each and all of them fronting on Scott street, comprise the entire property frontage on that street between Bayou St. John and the line of the said property of the said Canal Bank, and measure 189 feet and 9 inches in depth between parallel lines."

Plaintiffs inherited the property from the late Louis Castera. Castera in turn bought the property from J. F. Beugnot, in June, 1862. Castera died in the year 1872.

It was originally assessed in the name of Beugnot, although the sale to Castera had been made and was of record. Nearly all of it, if not all, was also assessed in the name of Castera, the actual owner.

The defendant pleads a tax title he bought from the auditor, who executed city taxes in accordance with section 3 of Act No. 80, p. 89, of 1888, and Act No. 126, p. 181, of 1896.

The state had acquired the property as adjudicatee for the taxes of the years 1882 and 1883.

Plaintiffs admit defendant's adverse possession.

The property bought by the defendant from the auditor is described as follows:

"(1) One lot of ground and improvements thereon, in the Second district of the city of New Orleans, designated as a tract of land one-half square from Taylor avenue, two-thirds square from Brooks street, St. Louis street, and Milne street, fronting on Taylor avenue.

"(2) One certain tract of land, and improvements thereon, in the Second district of the city of New Orleans, designated as a tract of land bounded by St. Louis street, Taylor avenue, and Brooks street.

"(3) Five squares of ground and improvements thereon, in the Second district of the city of New Orleans, designated as a tract of land bounded by St. Philip, Esplanade, Taylor avenue, and Brooks streets."

The descriptions, quoting from "Second" and "Third" descriptions, supra, correspond with the description of the property in the deed by the state to defendant, as before stated, as a result of sales and adjudication to the state for the taxes of the years 1882 and 1883, in the name of Castera.

The description No. 1 supra does not entirely correspond with the description of the property as made to the state in the year 1882.

Plaintiffs' grounds of attack on defendant's title are that it is not possible for the tax deeds and the proceedings upon which they are founded to identify the property; that the description upon which the defendant claims the property is not a description at all.

The other objection directed against defendant's title is grounded upon the asserted dual assessment of the property.

We take up the grounds of defense in the inverse order in which they are presented in the argument of counsel. Dual assessment will be disposed of first.

As relates to facts, it appears that the property which had been bought by Louis Castera from Dr. Beugnot was assessed in the name of each; that is, in the name of Castera and in another separate and distinct assessment in the name of Beugnot.

The surveyor, Pelie, who testified in the case, said as a witness that Beugnot owned at the date of the assessment part of the property assessed.

Be that as it may, we are not of the opinion that the plea of dual assessment should be maintained. The Constitution reads:

"No sale of property for taxes shall be set aside for any cause except on proof of dual assessment or payment of the tax." Const. art. 233.

The time, the constitutional limitation of three years, has expired if the assessments made are not considered as dual assessments. It is otherwise, if it is a dual assessment.

The nullity pleaded is leveled at the assessment. If there was a dual assessment the sale is null. If there was not, the sale is valid.

We have applied ourselves to the determination of the question whether there was a dual assessment.

The question is original. There are no precedents on the point. It depends entirely upon the special provision of the law. If a very close construction be given to it, in many cases, owing to the carelessness or indifference of the assessing officer, a perfectly legal assessment will become null.

If any part of the immovable property of an owner be assessed with the land of others, to that extent there will be dual assessment, if the "others" be also assessed.

If, as in this case, the same property is described on the assessment roll as owned by different persons, or, as it may happen in other cases than in the case here, it is twice described as owned by the same person, then there will be nullity.

We cannot imagine that this was the intention of those who framed and adopted the article of the Constitution. A legal assessment remains legal, it cannot be rendered null by other assessments. The word "dual,"

as we understand, has application whenever a person not the owner claims under a second assessment.

To illustrate by reference to the facts of this case: If Beugnot's title had been transferred for taxes to a third person, and this third person had gone into possession years and years ago, he would have acquired no title. His would have been a dual assessment against which the article of the Constitution is leveled.

What motive could those who adopted the article of the Constitution have had in providing for the annulment of an assessment made in due form against the owner who owes the tax?

Against him the second assessment is the merest brutum fulmen.

Evidently the article in question did not seek to sanction a dual assessment under the circumstances before mentioned.

It might have been different if the article in question had contained the words: "No sale of property for taxes shall be set aside for any cause," without excepting dual assessment. It might, perhaps, have been construed as including dual assessment made under the circumstances before mentioned.

If these words had not been qualified as they are by excepting dual assessment the sweeping provision would have legalized such a dual assessment as we have before referred to. This it was evidently the purpose to avoid.

Learned counsel cite the case of Booksh v. Wilbert Lumber Co., 115 La. 351, 39 South. 9. The facts in that case are not entirely similar. The property had been assessed in the name of two persons; one residing in one parish, and the other in the parish adjacent.

The tax sale in West Baton Rouge was declared null, because of the dual assessment.

The point decided was that the state has no authority to sell, under a duplicate assessment, property on which taxes have been paid.

The taxes had been paid on one of the assessments; the adjudication to the state was, by reason of that fact, null and void.

The court said in said case:

"Dual assessment and payment of taxes prior to the date of the sale, are causes of nullity, especially excepted from article 233 of the Constitution of 1898."

That has no bearing here, for we do not think that there was dual assessment.

Before taking up the next proposition, we will take up the question relating to the square 915 and 916 of the land.

In his answer, defendant disclaims title of possession to that part of the land or property which is described in plaintiffs' petition as part of square 915 and 916.

As relates to these two pieces of land, it follows that there is no question for decision. As between plaintiffs and defendant, under the disclaimer of the latter, the property must go to the former.

We take up for decision the next question at issue.

It is true that the "Third" piece of land, the description of which has been heretofore copied, is not completely described. It is sufficiently described, however, for identification. The metes and bounds are not irreconcilable with each other.

The starting point in describing the lot is on the 'continuation of Esplanade street. There can be no question. The southern and western boundary are sufficiently given and this indicates the situs of the land.

The "Second" tract can be traced with some degree of certainty; the point of departure is west and begins where the lines of the lot numbered "Second" end and extends along the street to lot north of it to lot "First." There are three well-indicated lines, which sufficiently describe the property.

We come to the first lot of ground. We find it impossible to follow its description as before given. Plaintiffs have no land south of Scott street, and never owned land south

of that street. Taylor avenue is one square south of Scott street, and, therefore, cannot be the southern boundary of the tract.

We take up the description given and attempt to measure out the land in the square north of Scott street. It leads to no satisfactory conclusion. It is not possible from any direction to measure two-thirds and afterwards a fraction of a half of any square, and thereafter leave any land of plaintiff subject to taxation. The foregoing are the measurements given as part of a description. It would not be possible to measure the land front on Taylor avenue under any circumstances. "Property cannot begin one-half of a square from Taylor avenue, extend two-thirds of a square from Brooks street and none the less front on Taylor avenue, as called for by the description."

We have found it possible to maintain the second and third descriptions; but as to the first, it is hopelessly null.

Even stubborn old Terminus in mythology, the tutelar god of boundaries, would have found it impossible to locate the lines given of tract "Third."

The two lots numbered above "First" and "Second" are owned by defendant under the tax deed. The title to the remainder of the land is recognized as in the plaintiffs.

The contention is, on the part of the defendant, that the tax debtor has no cause for complaint if the assessment and sale cover his land and that of others.

A number of decisions are cited in support of the contention. We are not inclined to criticise them. Their application is possible to another state of facts. Generally the owner cannot complain of the amount of the taxes unless he makes timely complaint of excessive valuation. Act No. 96, p. 128, of 1882, § 27.

But where a description is fatally defective, it cannot be made to include any land at all under its terms.

Even though the owner has made no complaint to the assessing authorities, it will not be assumed that the land has been correctly or sufficiently assessed.

Unquestionably, the assessment should describe the property with reasonable certainty to be the basis of the conveyance, and to notify the owner that his property is offered for sale for taxes due by him.

The amount of the taxes is due primarily by the property. The owner's name is descriptive. It follows that the property assessed should be so assessed as to be susceptible of some identification.

The words "erroneous" and "misplaced" may be disregarded, set aside, and the remainder of the description taken as sufficient, if that remainder stands for any sort of a description. But here we have seen that the description does not embrace any land. It is misleading, confusing, and cannot be followed.

Although article 233 of the Constitution of 1898 provides no exception for defective descriptions, in the nature of things, an asserted description, wanting in all the elements of description, cannot be held as good at all if it has no feature of legal certainty.

Decisions of this court sustain the rule that an assessment is fatally defective and void if it contains such a falsity in the description or designation as renders identification not reasonably possible. Succession of Sallier, 115 La. 97, 38 South. 929; Levy v. Gause, 112 La. 799, 36 South. 684; Scott v. Parry, 108 La. 11, 32 South. 188; Improvement Co. v. Fasnacht, 47 La. Ann. 1294, 17 South. 800; Gibson v. Hitchcock, 37 La. Ann. 214; Augusti v. Lawless, 45 La. Ann. 1370, 14 South. 228.

Similar views are expressed in "Treatises on the Law of Taxation," viz.:

"Where the description in an assessment could apply to either of the pieces of land, it is void for uncertainty, as is also a description which is part of a section, block or lot, with-

out showing how much or giving boundaries."
2 Cooley on Taxation (3d Ed.) p. 748.

The lot "First" cannot be considered as having been adjudicated to the state. The owner has interest sufficient to contest the disposition made of it.

It may be here stated, although it was not urged as a point at issue at bar or in the briefs, that each of the tracts of land was assessed separately and separately described in the deed. They were sold to the state in one deed.

It has been held in other jurisdictions that where different tracts belonging to the tax debtor are sold to the same person for taxes of the same year one deed may be executed to cover all. 27 Am. & Eng. Ency. of Law, p. 971.

This is pertinent as relates to lots "Two" and "Three" described, supra.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is amended so as to recognize plaintiffs as owners of the portions claimed by them, and as shown on maps on file, in squares Nos. 937, 936, 935, 934, 933, 932, 931, 916, and 915. And the defendant's title is recognized as valid for the remainder of the properties described in his titles and extending from St. Louis to Esplanade streets; all costs below and on appeal to be paid by defendants.

LAND, J., takes no part, not having heard the argument.