HIGGINS, Justice.
 

 These petitory actions were consolidated and tried jointly in the district court and the Court of Appeal. ■ Plaintiffs are claiming title to certain property located in the Northeast Quarter of the Southeast Quarter (N. E. i/4 of S. E. %) of Section 29, Township 18, North Range 3 East, in the Parish of Ouachita, State of Louisiana, through their vendor, John H. Noble, who was alleged to have acquired the land by tax deed dated June 15, 1889, for the unpaid taxes of 1888, amounting to $9.19; due by the owner, Joseph B. Wolfe & Co., in which name it was assessed, the deed reciting that the property was sold under the provisions of Act No. 85 of 1888, by J. E. McGuire, Tax Collector, to John H. Noble, the land being described as follows: “One hundred and fourteen acres known as Thos. McGuire place about one and a half mile from Trenton, lying on both sides of Claiborne Road.”
 

 Plaintiffs pleaded peremption under Article 233 of the Constitution of 1898, and the
 
 *507
 
 ten years’ prescription acquirendi causa in support of their title.
 

 Several parties were joined as defendants in the suits, as they were in possession, as owners, of some of the lands to which the plaintiffs were asserting title.
 

 The defendants denied that the purported assessment and the tax deed were valid and averred that they were null and void ab initio, because the mandatory provisions of the statute were not complied with in attempting to describe the property, and that the assessment and the tax deed did not contain a description susceptible of identifying the property. The defendants also pleaded lack of notice, dual assessments, prior payment of taxes and that the assessment and the tax sale did not cover the property they are claiming. They also set forth their own record titles and pleaded ten years’ prescription acquirendi causa.
 

 The district judge rendered judgments in favor of the defendants dismissing the plaintiffs’ suits and they have appealed.
 

 In the Court of Appeal, the plaintiffs contended that they held a valid title to the land — not because the assessment and tax deed complied with the law, but, because the errors and deficiency in the assessment and the tax sale were cured by the peremption period provided in Article 233 of the Constitution of 1898 and the prescription of ten years’ acquirendi causa.
 

 The Court of Appeal held that the assessment and the tax deed were null and void, because the land was not described according to the mandatory provisions of Sections
 
 7
 
 and 18 of Act No. 85 of 1888, under which they were made; that this radical or absolute nullity was neither cured by the three years’ peremption period provided for in Article 233 of the Constitution of 1898 nor the prescription of ten years’ acquirendi causa; and that the provisions of Act No. 140 of 1890 had no application, since this statute was passed after the tax sale was made. 185 So. 518; 185 So. 525.
 

 We granted the plaintiffs’ application for a writ of certiorari, and the matter is now before us for review.
 

 We find no fault with the opinion of the Court of Appeal holding that the tax assessment and the tax sale, through which the plaintiffs are claiming, were illegal, because a mere reading of Sections
 
 7,
 
 18, 63 and 69 of Act No. 85 of 1888, in connection with the description of the property in the assessment and the tax sale, reveals that the sheriff and ex-officio tax collector failed to comply with the mandatory provisions of the statute under which the property was assessed and sold.
 

 The Court of Appeal also correctly concluded that the provisions of Act No. 140 of 1890 were inapplicable in the instant case, because that statute came into existence subsequent to the assessment and tax sale in question and the Act does not provide that it shall have retroactive effect.
 

 Our views are not in accord with those of the Court of Appeal with reference to the application of the provisions of Article 233 of the Constitution of 1898 to the facts of this case. That Court, in this connection, merely held that, since the description in the assessment and the tax sale
 
 *509
 
 did not meet the requirements of Sections 7 and 18 of Act No. 85 of 1888, they were null and void and, therefore, Article 233 of the Constitution of 1898 did not cure this “radical or absolute nullity.” Thus, in effect, holding that this Article of the Constitution did not affect the illegal tax assessments and tax sales made prior to 1898.
 

 Article 233 of the Constitution of 1898, in part, provides:
 

 “No sale of property for .taxes shall be set aside for any cause, except on proof of dual assessment, or of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption has expired, or within three years from the adoption of this Constitution, as to sales already made, and within three years from the date of recordation of the tax deed, as to sales made hereafter, if no notice is given. * * *”
 

 These provisions are almost identical to those contained in Article 233 of the Constitution of 1913 and in Section 11 of Article 10 of the Constitution of 1921.
 

 The above quoted portion of Article 233 of the Constitution of 1898 is unquestionably retroactive by its express terms. It refers to “sales already made,” and allows three years from the adoption of the Constitution (in compliance with the due process requirements of the Fifth and Fourteenth Amendments of the Constitution of the United States, U.S.C.A., and similar provisions in our own Constitution) to •those who have any rights in properties already sold, to attack such sales, in order to have them set aside, if invalid.
 

 In the case of Weber’s Heirs v. Martinez, 125 La. 663, 51 So. 679, 680, the Court said:
 
 *511
 
 from contesting the fact of the assessment, save in connection with the assertion that the description in the tax deed and in the assessment fail to identify the property.
 
 *
 
 * *” See, also, Canter v. Williams’ Heirs, 107 La. 77, 31 So. 627; Ashley Co. v. Bradford, 109 La. 641, 33 So. 634; Carey et al. v. Cagney et al., 109 La. 77, 33 So. 89; Shelly v. Friedrichs, 117 La. 679, 42 So. 218; Hirst v. Xeter Realty, Ltd., 138 La. 398, 70 So. 339; Gouaux v. Beaullieu et al., 123 La. 684, 49 So. 285.
 

 
 *509
 
 “The sale to the state, which constitutes the basis of the defendant’s title, was made, as we have stated, on March 14, 1885, and was recorded on August 29th of the same year, nearly 13 years before the Constitution was adopted; and this attack was not made upon it until May 6, 1908, some 10 years after the adoption of the (Constitution. The attack is therefore barred by the prescription established by the Constitution, unless found to be within either one or the other of the exceptions thereby established, or within some exception, held by this court to be necessarily implied therefrom. It has been held that it is immaterial for the purposes of the question to be here determined whether an assessment has been made in the name of one person or another, or in no name, or whether the owner, not in possession, has been notified of the intention to sell or has not been notified, or whether the sale has been advertised or has not been advertised. Canter v. Williams, 107 La. 77, 31 So. 627; Crillen v. N. O. Terminal Company, 117 La. 349, 41 So. 645; Little River Lbr. Company v. Thompson, 118 La. 284, 42 So. 938. As to the plaintiffs’ allegation that no taxes were due, the answer is that it being admitted that none were paid, and it not being pretended that the property was exempt, the taxes were necessarily due, provided there was an assessment, and the tax debtor is barred by the constitutional prescription
 

 
 *511
 
 It will he noted that the pertinent provision of Article 233 of 1898 expressly states that after the lapse of three years, the tax sales shall not be set aside for any reasons, except: (1) Dual assessment, and (2) prior payment of the taxes for which the tax sale was made.
 

 In interpreting this Articlfe, the Supreme. Court held that the above limitation constitutes a prescription liberandi causa and that its running is interrupted so long as the tax- debtor is permitted to remain in undisturbed, actual corporeal possession of the property sold. Carey et al. v. Cagney, supra; In re Scim, 111 La. 554, 562, 35 So. 744; Baldwin Lumber Co. v. Dalferes, 138 La. 507, 70 So. 493; Head v. Howcott Land Company, 119 La. 331, 44 So. 117; and In re Sheehy, 119 La. 608, 44 So. 315.
 

 In construing the above quoted Article of the Constitution of 1898, the Supreme Court further held that the three years’ limitation • or prescriptive period did not apply to a tax sale where the property was not sufficiently described therein to permit identification thereof. Guillory v. Elms, 126 La. 560, 567, 52 So. 767, 770; Landry v. McWilliams, 135 La. 655, 65 So. 875; Fellman’s Heirs v. Interstate Land Company, 163 La. 529, 112 So. 405; and Hirst v. Xeter Realty Company, supra.
 

 The Court of Appeal did not pass upon the question raised by the plaintiffs that, while the assessment and the tax sale were illegal in the sense that they did not comply with the provisions of Act No. 85 of 1888, nevertheless, the property, as described in the assessment and the tax sale, was susceptible of reasonable identification and, therefore, the three year period of prescription or limitation as provided in Article 233 of the Constitution of 1898, having elapsed, the assessment and the tax sale could not thereafter be attacked and set aside. The error that the Court of Appeal fell into was in limiting its consideration of the case to the provisions of Act No. 85 of 1888, in determining whether the alleged illegality of the assessment and sale was relative or absolute. The nullity might well have been absolute, only in the light of the provision^ of the statute under which the property was sold, but not under the retroactive curative provisions of the Article of the Constitution of 1898, as construed by this Court, because, if the property were so described as to be reasonably identified, even though it did not meet with the requirements of Act No. 85 of 1888, the tax purchaser, or those holdirig through him, would be entitled to the benefits of the provisions of the Article of the Constitution. We, therefore, disagree with the opinion of the Court of Appeal in this respect.
 

 
 *513
 
 Now,' since that Court predicated its conclusion with reference to the plaintiffs’ plea of ten years’ prescription acquirendi causa, upon its finding that the tax assessment and the tax sale were absolute nullities, that part of its decision is also overruled.
 

 The next question is whether or not the property was described in the assessment and the tax sale with such certainty as to make it susceptible of reasonable identification? The law on this subject will be found in the case of Progressive Realty Co. v. Levenberg, 177 La. 749, 149 So. 444, 446, where it is stated:
 

 “The want of a sufficient description of the property in the tax deed to identify it as the property that belonged to the tax debtor at the time of the assessment for the taxes for which the property was sold is a cause of nullity for which the action to annul the tax sale is not barred by the prescription of three years. The -reason for that is that a tax deed without a description by which a particular piece of property can be identified is no deed at all ; and a deed describing one piece of property cannot convey title for another or different piece of property. Gibson v. Hitchcock, 37 La.Ann. [209] 214; Augusti v. Lawless’ Heirs, 45 La.Ann. 1370, 14 So. 228; Gulf State Land & Improvement Co. v. Fasnacht, 47 La.Ann. 1294, 17 So. 800; Scott v. Parry, 108 La. 11, 32 So. 188; Levy v. Gause, 112 La. [789] 799, 36 So. 684; Posey v. City of New Orleans, 113 La. 1059, 37 So. 969; Succession of Sallier, 115 La. 97, 38 So. 929; Terry v. Heisen, 115 La. [1070] 1080, 40 So. 461; Crillen v. New Orleans Terminal Co., 117 La. [349] 354, 41 So. 645; Shelly v. Friedrichs, 117 La. 679, 42 So. 218; Lewis & Co. v. Brock, 123 La. 1, 48 So. 563; Guillory v. Elms, 126 La. 560, 52 So. 767; Brock v. E. McIlhenny’s Son, 136 La. 903, 67 So. 951.”
 

 Plaintiffs alleged that they were the owners of the property in question by the following chain of title: (1) Severance from the public domain; (2) Joseph B. Wolfe & Co., by tax collector to John H. Noble, dated June 15, 1889; and (3) John H. Noble to W. L. Morris, dated December 3, 1892.
 

 Morris instituted these suits and subsequently died and his heirs were substituted as plaintiffs.
 

 On January 10, 1851, Leonidas Whyte obtained by patent from the United States Government the Southeast Quarter (S.E. %) °f Section 29, Township 18 North, Range 3 East.
 

 On October 6, 1856, the patentee, by deed, conveyed to Henry H. Slaughter a part of the land which he acquired by' patent, describing the land by metes and bounds, without giving the acreage and without referring to the Claiborne road.
 

 The patentee, by deed dated March 11, 1859, conveyed to William Oliver a part of the land which he had acquired by patent, describing it by metes and bounds and as being on the North side of the Claiborne road, containing, in all, eleven acres.
 

 The patentee, by a deed dated January 29, 1861, conveyed to McD. Oliver a part
 
 *515
 
 of the patented land, describing the land by metes and bounds and as containing twenty-three acres, “more or less.”
 

 On October 10, 1866, McD. Oliver sold this same property to Thomas McGuire, the description of the property being identical.
 

 On September 11, 1869, Thomas McGuire secured from the patentee, Leonidas Whyte, a ratification of the foregoing sale and in the same transaction bought from Whyte the East half (E.%) of the Southeast Quarter (S. E.1^), Section 29, Township 18 North, Range 3 East.
 

 On October 4, 1869, Thomas McGuire purchased from James R. Endor ten acres of land.
 

 On April 24, 1872, Thomas McGuire acquired thirty acres known as the “Stamper tract.”
 

 On February 3, 1874, Thomas McGuire purchased ten acres from R. H. Spiro.
 

 On May 13, 1878, Thomas McGuire sold to Joseph B. Wolfe & Co. certain lands consisting of several tracts located in the Northeast Quarter (N. E.%) of Section 29, and also including the McD. Oliver tract located in the Southeast Quarter (S. E.%) of Section 29, the McD. Oliver tract being described in the deed, as follows:
 

 “Commencing at the half mile corner between sections 20 and 29 in Township 18, North of Range 3 East, thence south on J. P. Crosley’s line 59 9/11 poles to the Endors corner on or near the Claiborne Road, thence 19° North of West on or near the Claiborne Road 186 poles to H. H. Slaughter’s line, thence north to Wm. Oliver’s southeast corner, thence East to the place of beginning,
 
 containing 23 acres more or less,
 
 it being the same acquired by this vender from McD. Oliver on the 10th of October, 1866 — as per act of record in notarial Book “R”, pages' 74 and 75 — which said above described sale was subsequently ratified and confirmed by Leonidas Whyte a resident of said Parish and State, who at the time of confirming the above sale sold to said McGuire all the remainder of the land situated in the East % of South East % of Section 29 in T. 18, N. R. 3
 
 East
 
 — except
 
 such parts or portions thereof as are embraced in the parcels of land particularly described in these pretended sales of land to H. H. Slaughter, Wm. Oliver and Jas. R. Endor."
 
 (Italics ours.)
 

 By a tax deed dated June 15, 1889, certain property of Joseph B. Wolfe & Co. was sold by the Sheriff and Tax Collector, under the provisions of Act No. 85 of 1888, to John H. Noble for the unpaid taxes of 1888,'amounting to $9.19, the property being described on the assessment roll and in the tax deed only as follows, to-wit:
 

 “One hundred and fourteen acres known as Thos. McGuire place about one and a half mile from Trenton, lying on both sides of Claiborne Road.”
 

 On December 3, 1892, John H. Noble sold the property to W. L. Morris, the original plaintiff in these petitory actions, the property being described as follows:
 

 “The following described tract and parcel of land lying and being situated in Ouachita Parish, State of Louisiana,
 
 about four miles west of Trenton lying upon both sides of Claiborne Road known as the
 
 
 *517
 

 Thomas McGuire Place cmd containing one hundred and fourteen acres, more or less,
 
 it being same property acquired by this vendor of J. E. McGuire, Dy. Sheriff and Tax Collector, on the 15th day of June, A. D. 1889, as per Notarial Book 30, folio 308.” (Italics ours.)
 

 The defendant W. F. Wall, who was in possession of three acres of the land involved, introduced in evidence exhibits of mesne conveyance, which indicated an unbroken chain of title from the United States Government, patentee, to Wall, as follows:
 

 R. L. Whyte to Wm. Oliver, by deed, dated March 11, 1859.
 

 Wm. Oliver to B. D. Sheppard, by deed, dated August 21, 1871.
 

 B. D. Sheppard to J. P. Murphy, by deed, dated May 20, 1874.
 

 James P. Murphy to Jersey & Gillis, by deed, dated February 22, 1877.
 

 Gillis & Leverich to L. D. McLain, by deed, dated June 15, 1901.
 

 L. D. McLain to Thos. P. Evans, by deed, dated June 22, 1904.
 

 Thos. P. Evans to J. M. Avery, by deed, dated November 14, 1904.
 

 Jno. M. Avery to Jasper N. Miller, by deed, dated April 28, 1913.
 

 Jasper N. Miller to J. F. Boyd, by deed, dated July 15, 1915.
 

 James F. Boyd to Thos. A. Reagan, by deed, dated February 17, 1917.
 

 Thos. A. Reagan to Wesley F. Wall, by deed, dated October 20, 1917.
 

 It will be noted that, in the sale by Thomas McGuire to Joseph B. Wolfe & Co., the William Oliver, James R. Endo.r and H. H. Slaughter tracts of land are expressly excluded therefrom. It was admitted that the three acres of land in controversy between Wall and the plaintiffs are indicated by the letters “A, B. C and X,” on the blue print, identified as “Plaintiffs-C.”
 

 Conrad Cage, a civil engineer, who testified as the plaintiffs’ witness, on cross-examination, stated that there were approximately 3.4 chains between the iron pin designated as point
 
 “A”
 
 on the plat, from the west line of the northeast quarter of the southeast quarter, and that the line indicated between the letters “A” and “B” is practically coincident and the same as the east line of the tract of land described in the deed from Whyte to Slaughter. In answer to the question: “Assuming the east line of the Oliver tract began at a point 1.23 chains east of the northeast corner of the northwest quarter of the southeast quarter, and runs thence to the northeast corner of the Slaughter tract, then your testimony is that fence is west of the east line, is it not?” he said, “It is.” “Q. And that division fence would be entirely, west of the line? A. Yes.” The witness also stated that the line extending between the letters,“A” and “E”, on the blue print, is west of the east line of the William Oli-. ver tract.
 

 These facts and circumstances indicate very strongly that the land in the possession of the defendant Wall at no time formed a part of the property which was acquired by McGuire from McD. Oliver,
 
 *519
 
 and subsequently sold by McGuire to Wolfe & Company.
 

 This conclusion is further supported by the statements elicited from the plaintiff W. L. Morris. “Q. What was the occasion for hunting it up at that time? A. I just wanted to see where the lines were and how it lay. And when I examined the record, as I say, I found a niche I believe out of the — I think out of the McGuire forty that went to the Slaughter part. Might have been a cow trail or land like they had in those days so cows could get back
 
 to
 
 the woods.
 

 “Q. In other words the 'Slaughter forty made a niche into the McGuire forty? A. I think it did, yes, sir. The south forty of the McGuire tract.”
 

 With reference to the plaintiffs’ plea of prescription of thirty years, in connection with this particular three acre tract of land, the plaintiff Morris stated: “I owned the land 28 years, undisputed possession; before these men ever put a foot on it.” Therefore, conceding that the plaintiff had physical possession of this land, although he only claimed civil possession, he would not have possessed it the time required by law, in order to get a prescriptive title.
 

 The other respective defendants, who are claiming title to about ten acres of the land, trace their titles through S. T. Han-kins back to Thomas McGuire (who, it appears, did not consider the sale by himself to Wolfe & Company, or the tax sale by Wolfe & Company through the Sheriff to Noble, as affecting this particular land), for he sold it to his son, Manning S. McGuire, on May 17, 1905, arid Manning S. McGuire, on December 13, 1916, conveyed it to S. T. Hankins.
 

 Apparently, realizing that the vague and general description of the property in the tax assessment and the tax deed were hopelessly inadequate to establish the identity of the property sold, plaintiffs introduced in evidence copies of titles to portions of the Southeast Quarter of Section 29, Township 18 North, Range 3 East, which were originally patented to Leonidas Whyte on January 10, 1851, as well as copies of the links in his own chain of title, and other proof aliunde the titles, but the evidence, dehors the records and, the records rather than clarifying an obviously defective and involved matter, added to the confusion. It was only by conceding the overlapping in the boundary lines of the various tracts of land appearing in the exhibits that the learned counsel for the plaintiffs was able to establish what he considered the proper boundary lines. His ingenuity and industry deserve a more meritorious case. For instance, by piecing together the various tracts of land that Thomas McGuire acquired from different parties, he concluded that McGuire owned three-quarter sections running North and South and on both sides of the Claiborne road, in the Section, Township and Range in question, but that would have given Thomas McGuire one hundred and twenty acres of land, whereas, the deed of the plaintiffs’ authors in title calls for only “one hundred and fourteen acres, more or less.” He attempts to explain this discrepancy by the overlápping in the boundaries, but his . reconciliation of
 
 *521
 
 the boundary lines of what is referred to as “Thos. McGuire place” is unsatisfactory, because it is more imaginative than real.
 

 An effort was made to show that the “Thos. McGuire place” was well known by that name throughout the community, and consisted of one hundred fourteen acres of land. The plaintiff himself refers to the McD. Oliver property as such, even after McGuire bought it, and the north forty acres of the tract as the “Stamper Forty,” and to another portion of the land as the “Murphy tract.” Thus, it will be seen that neither the whole nor any particular part of the property claimed was identified as a part of the “McGuire place.”
 

 The plaintiff, in his testimony, stated that he was acquainted with the “Thos. McGuire place,” knew where the lines were located and knew when McGuire purchased each piece and from whom he purchased the same. Nevertheless, relative to the “South Forty” owned by McGuire or the Southeast Quarter, which plaintiff claims was a part of the McGuire place, he stated: “I didn’t claim it because I didn’t pay any attention to it. I didn’t know anything about it. They came to me about it at the time, Major Jones did, and I told him I didn’t have any time to hunt it up * * *.”
 

 It will .be remembered that, in the description contained in the tax deed, the property is said to be “one and a half mile from Trenton,” whereas, in the deed by Noble to Morris, it is described as being “four miles west of Trenton.” Again, in the deed of the William Oliver tract, which. was offered by the plaintiffs, in an attempt to prove part of the western boundary line of the McGuire tract, it is recited that this line begins at a point “one hundred and twenty-three chains east of the northeast corner of the northwest quarter of the northwest quarter of Section twenty-nine, etc.” This would fix the point of origin some eight thousand feet from the place where the plaintiffs have attempted to show the line should begin. Plaintiffs say this was an error in the deed, but they fail to allege any where in any of their petitions that this was a mistake, which should be corrected and thus afford defendants an opportunity to rebut this line of evidence.
 

 They endeavored to prove that the west line of the McGuire tract was at the quarter section line, and they also attempted to show that a fence existed along this line during Thomas McGuire’s occupancy of the property and since that time, by Mr. Cage, the engineer, who stated that he found old post holes and ridges and a difference in the elevation of the ground there. The witness • would not state that this was the remains of the old or original fence.
 

 Mr. and Mrs. W. Wall testified that in 1917, he had moved a fence on his east side or the east side of the Murphy tract in a westerly direction, a distance of about one hundred and fifty feet. Most likely, it was the old post holes and evidence of the presence of this fence that the engineer found and, therefore, had no bearing on the question of the boundary lines of the McGuire tract as it existed in 1888.
 

 Ths lands claimed by the plaintiffs are located four or five miles from where their father, the original plaintiff, lived for
 
 *523
 
 many years. It appears that he was an able and capable business man and yet, in spite of the fact that he claims he knew the boundary lines of the'property and its identity, he permitted others to go upon these lands under titles acquired through mesne conveyance, and subdivide, fence, occupy and farm the lands for a number of years. He did not institute suit until 1923, and lost a part of the land claimed through this tax sale by ten years’ prescription in the case of Morris v. Monroe Sand & Gravel Company, Inc., 166 La. 656, 117 So. 763, where the judgment of the lower court was affirmed on June 4, 1928. The Court of Appeal, in the case of Morris v. Hankins, 2 La.App. 199, on May 9, 1925, remanded the case for further proceedings, and, while the plaintiffs filed another suit to overcome the effect of the Court of Appeal decision, they did not press the trial of any of the cases on the merits until June 1937.
 

 We, therefore, conclude, as our learned brother below did, that neither from the various deeds nor the oral testimony are we able to say, as far as the lands involved in this litigation are concerned, that they were contained within the boundaries of the property sold for taxes to Noble in 1889 and designated as the “McGuire place.” It is our opinion that the property is not described with that reasonable certainty as to make it susceptible of identification, which is necessary to bring it within tlie curative prescriptive period of Article 233 of the Constitution of 1898.
 

 In regard to the pleas of ten and thirty years’ prescription filed by the plaintiff, he attempted to prove possession of the “McGuire tract” at all times since he purchased it from J. H. Noble. Morris testified that he had hired a man and his wife, who were to see “that there were no depredations on the wood.” Mr. and Mrs. W. G. Barr, who were the parties referred to, denied that they had ever been so employed.
 

 Plaintiff states that he fenced and farmed the North Forty, commonly called the “Stamper Forty,” but it appears that he subsequently sold this land.
 

 It is clear that the plaintiff Morris and his heirs did not have physical possession of the land involved in this controversy. He argued that his occupancy of the “Stamper Forty” gave him civil possession of the balance of the “McGuire tract,” which was sufficient to support a prescriptive title, but, as we have already pointed out, Thomas McGuire still claimed the property in question, as evidenced by the fact that he sold it' to his son, who exercised physical possession of it by fencing and using the property without interference or protest from the plaintiff Morris or his heirs. If plaintiff were confident that he owned the property, it is strange, indeed, that he waited almost thirty-two years from the date he claims he acquired the property, and nineteen years after McGuire’s son had actually taken possession of the property and used it, before instituting these suits.
 

 It is our view that the pleas of prescription of ten'and thirty years are without merit, as plaintiffs failed to show that they had possession of the property for either
 
 *525
 
 of these periods of time, as required by law.
 

 It is axiomatic that the plaintiff must depend upon the strength of his own title in a petitory action and cannot rely upon the weakness of his adversary’s title. Plaintiffs have failed to show that they have acquired title to the lands in question either through conveyance or by prescription.
 

 For the reasons assigned, the judgments of the district court and the Court of Appeal are affirmed at relators’ costs.