**DRYDEN et al. v. LAND INV. CO., Inc., et al.**

**No. 70.**

District Court, E. D. Louisiana.

July 30, 1941.

Cobb & Saunders and Charles D. Marshall, all of New Orleans, La., for plaintiffs.

Marion J. Epley, Jr., and Emmet Alpha, both of New Orleans, La., for Land Inv. Co., Inc.

BORAH, District Judge.

Plaintiffs brought this action against Land Investment Co., Inc., and two other named defendants, who have since been dismissed from this action, to annul certain tax sales which were allegedly made without authority of law. The case was tried by the court without a jury on stipulated facts, from which I derive these as essential to a disposition of it.

### Findings of Fact.

By duly recorded deed dated January 30, 1926, George B. Dryden acquired all of the property involved in this suit and he continued to own the property until December 30, 1933, at which time the property was sold to the Land Investment Co., Inc., at the tax sale herein attacked.

The land was assessed on the 1932 tax rolls of St. Bernard Parish for the taxes due in that year under assessments Nos. 503 and 504 to "Dryden, R. George, 1014 S. Kildys Avenue, Chicago, Ill." The lands were accurately and fully described in these assessments and Dryden did not pay the taxes assessed for the year 1932 under either of these assessments.

The sheriff and tax collector of St. Bernard Parish duly advertised for sale on October 28, 1933, all the property in St. Bernard Parish on which the 1932 taxes had not been paid, including all of the lands assessed to Dryden. However, the property of Dryden was not sold on Saturday, October 28, 1933, because the deputy tax collector inadvertently marked the taxes paid, which error was not discovered until the following Monday. Because of this circumstance all of the lands assessed to Dryden were again advertised for sale on December 30, 1933, for the unpaid taxes of 1932. The advertisements appear in the official journal of the Parish of St. Bernard in the editions of November 25th, December 2nd, December 8th, December 16th, December 23rd and December 30th, 1933.

On December 30, 1933, the sheriff and tax collector did proceed to declare the land un-

der each of the said assessments to be adjudicated to the Land Investment Co., Inc. Whereupon the full amount of taxes, interest and costs due under each assessment were paid by the Land Investment Co., Inc., to the sheriff and tax collector. The tax deeds to the Land Investment Co., Inc., were duly recorded in the conveyance records of St. Bernard Parish on January 11, 1934. The Land Investment Co., Inc., has paid taxes annually on the property from 1932 through 1939.

On January 12, 1937, the Land Investment Co., Inc., filed suit in the 25th Judicial District Court for the Parish of St. Bernard against Dryden, the former tax debtor, to confirm the tax title of the Land Investment Co., Inc. A copy of the entire record including the judgment rendered in this suit is in evidence. As will appear from the aforementioned proceedings, Dryden then lived in Chicago and the District Court of St. Bernard Parish appointed a curator ad hoc to represent him. The curator notified Dryden by letter that he had been appointed by the court to represent him in the tax confirmation suit, pointed out the lands involved and requested that he be advised. A follow-up letter brought this response from Dryden, "I am no longer interested in the property to which you refer". After receiving this letter the curator filed an answer to which were attached the letters above mentioned. With this evidence before the court, and after all legal delays were permitted to elapse, the court rendered judgment on July 29, 1937, against Dryden, decreeing the Land Investment Co., Inc., to be the true and lawful owner of the lands covered in this suit and confirming and rendering incontestable the title of the Land Investment Co., Inc. The present action makes no mention of this judgment whatsoever and simply attacks the tax sales and the title of the Land Investment Co., Inc., under those tax sales.

On October 24, 1938, Dryden executed an instrument purporting to convey to plaintiff Todd the lands involved in this suit. The deed from Dryden to Todd was not recorded in St. Bernard Parish until February 14, 1939. The instant suit was filed on January 5, 1939.

### Discussion.

▉ From the foregoing it is apparent that Dryden had no interest in bringing this suit as he had conveyed all the property to his co-plaintiff, Todd, before filing this suit. State ex rel. Adema et al. v. Meraux, Judge,

191 La. 202, 184 So. 825. It would also seem that Todd has no interest sufficient to justify suit by him against the defendant. Todd holds his interest under a deed from Dryden and since this deed was not of record when the present suit was instituted, such rights as Todd had must be deemed wholly non-existent as to defendant, a third party. It is well settled in Louisiana that anyone claiming any right in immovable property is protected against interference on the part of the plaintiff asserting a right not of record. George et al. v. Manhattan Land & Fruit Co. et al., 5 Cir., 51 F.2d 28; Herndon v. Wakefield-Moore Realty Co., 143 La. 724, 79 So. 318; see Revised Civil Code, Article 2266. Accordingly, I reach the conclusions that neither of the plaintiffs herein has an interest sufficient to justify a suit by him against the defendant.

▉ But assuming that plaintiffs are properly before the court and that they have a right to maintain this action in its present form, it is clear that a dismissal should be decreed on other grounds. Plaintiffs' contention rests on the ground that in selling property for unpaid taxes, the sheriff and tax collector does so under authority given him by Section 53 of Act 170 of the Legislature of Louisiana for the year 1898. That under this statute the sheriff and tax collector was required by law to conduct one general sale or a consecutive series of sales of the delinquent tax property, and that after conducting this sale his authority for that year was exhausted. That in the instant case the general tax sale was advertised to take effect on October 28, 1933, on which date the tax sale was held and all but a few pieces of property were either sold to third persons or adjudicated to the state. Such being the situation it is contended that the reason which prevented the tax collector from selling the property of Dryden on October 28, 1933, is immaterial, the material fact being that he did not sell the property on that date but undertook to advertise and dispose of it at another sale and upon another date. With respect to this action on the part of the sheriff and tax collector, it is claimed that he was entirely without authority to make this second sale and that everything he did in connection therewith was illegal and that his acts are absolute nullities.

Section 53 of Act 170 of 1898 provides as follows:

"That at the expiration of the said twenty days' notice, or as soon thereafter as prac-

ticable, counting from the day when the last of said notices is delivered or personal or domicile service is made, in so far as the parish of Orleans is concerned (to comply with Sections 51 and 52 of this act), or mailed, published or posted in the other parishes, the tax collector or sheriff shall proceed to advertise for sale the consolidated delinquent tax list under one form, as provided for judicial sales, all the immovable property on which the taxes are due, substantially in the following form, to-wit: [Here follows form of advertisement]

"Said advertisement shall be signed officially by the State tax collector, or by the sheriff and ex-officio collector of State taxes, and shall be dated; provided, that the bid to be accepted shall be, at least, equal to the taxes and costs and interest; otherwise the tax collector is hereby authorized to bid in said property for the State and shall not readvertise for sale said property or properties so adjudicated to the State, unless the same has been redeemed, and shall make out and record a title deed, as in sales to individuals * * *."

I find nothing in the language of this statute which supports the contention that the sheriff had no authority to readvertise the property. As I construe the quoted language the statute contemplated that under certain circumstances the sheriff may have to readvertise the property, and only prohibits him from so doing when the land is adjudicated to the State. It seems to contemplate that there may be instances in which the tax collector does not desire to adjudicate the property to the State because he is "authorized" but not required to bid in the property for the State. The statute further seems to leave him with discretion as to whether he shall accept a bid or not, the only restriction of his acceptance of bids being that the bid to be accepted must be at least equal to the taxes, costs and interest. In Section 60 of the aforementioned act it is provided that if any tax collector should fail, neglect or refuse to seize, advertise and sell the delinquent property, he is said to be guilty of nonfeasance in office, and upon conviction, shall be dismissed from office. The sheriff's authority was to advertise and sell the property and it cannot be said that he fully exercised the authority vested in him by simply advertising the property for sale, for his authority was not fully exercised until the sale had been made. The statute imposes no restriction on his readvertising property unless the property is adjudicated to the State. This is the only limitation which the statute imposes on the sheriff's authority. Consequently, I conclude that the tax sales herein attacked were regularly and validly conducted as required by law.

But assuming that this conclusion is not warranted and that the tax collector has only the authority to do the things he is expressly authorized to do by Act 170 of 1898, and that if he does anything not authorized by such statute, or if he acts in any way prohibited by the statute, that he is then acting without legal authority and any tax sale so made is absolutely null and void. And assuming further that the act of the tax collector in the instant case could be construed to be an absolute nullity, it is clear that it would be such only under the provisions of Act 170 of 1898, but not under the retroactive curative provisions of Section 11 of Article 10 of the Constitution of 1921. There is little that need be said in demonstration that the defendant would be entitled to the benefit of the provisions of the article of the Constitution of 1921 even if it be said that the tax collector did not meet the requirements of Section 53 of Act 170 of 1898.

It is conceded that the provisions of Section 11 of Article 10 of the Constitution of 1921 are for all practical purposes identical with Article 233 of the Constitution of 1898, and that Act 106 of the Legislature of Louisiana for the year 1934 providing for the quieting of tax titles is identical with Act 101 of the Legislature of Louisiana for the year 1898. Section 51 of Act 170 of 1898 provides that each tax collector shall send to each taxpayer a notice of delinquency and after this notice is sent the tax collector is obliged to make out a procès verbal setting out the names of the delinquents notified, their addresses, description of property, etc. Section 52 of said Act requires the sheriff to publish once a week for two weeks a notice addressed to all unknown owners and to certify on the tax rolls that he has published such notice. The following section provides that the tax collector shall proceed to advertise the tax debtor's property for sale and to sell it for the unpaid taxes. If plaintiffs be correct in their contention and the sheriff should fail to follow these mandatory requirements of the statute he would be acting without authority in law in attempting to sell the lands and the sale would not be a sheriff's sale or a sale for taxes but an act that is better

930

known to the law as a tort. If this contention be sound, tax titles in Louisiana would again be in the chaotic state from which they were removed by the adoption of Article 233 of the Constitution of 1898. See Ashley Co. v. Bradford, 109 La. 641, 33 So. 634. In Gayle v. Slicer, 188 La. 940, 178 So. 498, 501, the Supreme Court of Louisiana had occasion to consider the effect of such failure to advertise, and in doing so said, "After 3 years from the date of the recording of a tax sale have elapsed, it is a matter of no importance to the validity of the sale 'whether the owner, not in possession, has been notified of the intention to sell or has not been notified, or whether the sale has been advertised or has not been advertised.' Weber's Heirs v. Martinez, 125 La. 663, 667, 51 So. 679, 681, citing Little River Lumber Co. v. Thompson, 118 La. 284, 42 So. 938."

In Morris v. Hankins, 192 La. 504, 188 So. 155, 157, the court had occasion to consider the application of the constitutional pre-emptive period with respect to the failure of the tax collector to comply with the mandatory provisions of the statute relative to assessments, and the court there said,

"We find no fault with the opinion of the Court of Appeal holding that the tax assessment and the tax sale, through which the plaintiffs are claiming, were illegal, because a mere reading of Sections 7, 18, 63 and 69 of Act No. 85 of 1888, in connection with the description of the property in the assessment and the tax sale, reveals that the sheriff and ex-officio tax collector failed to comply with the mandatory provisions of the statute under which the property was assessed and sold. * * *

"The error that the Court of Appeal fell into was in limiting its consideration of the case to the provisions of Act No. 85 of 1888, in determining whether the alleged illegality of the assessment and sale was relative or absolute. The nullity might well have been absolute, only in the light of the provisions of the statute under which the property was sold, but not under the retroactive curative provisions of the Article of the Constitution of 1898, as construed by this Court, because, if the property were so described as to be reasonably identified, even though it did not meet the requirements of Act No. 85 of 1888, the tax purchaser, or those holding through him, would be entitled to the benefits of the provisions of the Article of the Constitution. We, therefore, disagree with the opinion of the Court of Appeal in this respect."

■ Another point worthy of mention is the fact that the plaintiffs here completely ignore the judgment which was rendered in the 25th Judicial District Court against Dryden, decreeing defendant to be the true and lawful owner of the lands covered by this suit and confirming and rendering incontestable the title of defendant. Pretermitting the fact that Dryden impliedly consented to this judgment being rendered against him, it would seem that plaintiffs must first attack this judgment directly before bringing an action to annul the tax sales. In the case of Fellman v. Kay, 147 La. 953, 86 So. 406, 409, the Supreme Court, after referring to Article 233 of the Constitution of 1898, and Act 101 of 1898 which was passed to carry out the intent of this article, said:

"It is thus clear that it was the intention of the constitutional convention of 1898 that tax titles unassailed after three years after recording the tax title in the conveyance office shall be unassailable by the former owner, or his heirs or assigns, unless the action to annul were brought within three years. In other words, that the lapse of three years without the institution of suit should forever bar an action to annul, except only in cases where the taxes had been paid, or a dual assessment had occurred.

"It is equally plain that it was the intention of the Legislature, under the constitutional mandate imposed upon it, to give the right to the tax purchaser to shorten this three year prescriptive bar to six months by the proceeding authorized by section 1 of act 101 of 1898. In other words, where the tax purchaser was not willing to sit still and wait until the three years had passed, he could present his tax deed, which, under the Constitution, was prima facie valid, to the court of competent jurisdiction, and provoke a notice from the court to the former owner of the property that he claimed ownership by virtue of his tax deed, and call on him to bring his action to annul, if any he had, within six months or forever be debarred from bringing it."

In the more recent case of Claiborne v. Lezina, 175 La. 635, 144 So. 131, 133, on rehearing the court said, "The proceeding authorized by Act No. 101 of 1898 is more than mere notice to the tax debtor that the tax purchaser intends to confirm the tax title. It is an action, a suit to quiet the title, a demand that it be confirmed, and the rules relating to pleadings and exceptions generally apply to such proceedings."

All of which shows unmistakably that the proceeding in the 25th Judicial District Court should be regarded as a suit or action as those terms are used in law. It therefore follows that, since the act authorized the defendant to bring such a suit in the manner in which it was brought, the court was vested with jurisdiction ratione materiae and the grounds now relied on by plaintiffs for the purpose of attack were then available to Dryden for the purpose of defense. It follows that since the trial court was vested with jurisdiction ratione personae that the judgment in question cannot be collaterally attacked even for fraud. Hamburger, Jr., et al. v. Purcell, 139 La. 456, 71 So. 765, 767.

## Conclusions of Law.

Plaintiffs are not properly joined in this proceeding. Neither have they nor either of them an interest sufficient to justify a suit against the defendant.

The tax sale herein attacked was validly conducted in compliance with Louisiana law.

If the tax sale was not regularly and validly conducted, plaintiffs are now barred by the constitutional pre-emptive period of three years from attacking the sale on the grounds urged.

The judgment rendered in the 25th Judicial District Court cannot be collaterally attacked by setting up the defenses which might have been raised in the original action.

Judgment should be entered herein in favor of defendant and against plaintiffs, dismissing plaintiffs' suit with costs, and the clerk is directed to enter judgment accordingly.